## W. J. HILL *v.* LIZZIE L. NASH ET AL.

1. CHANCERY COURT. *Amendment. Practice.*

    The irregular allowance of an amendment to a bill of complaint does not constitute reversible error, when all the parties had notice thereof, and it relates to a fact not controverted in the cause.

2. POSSESSION. *Follows title. Husband and wife.*

    Where a husband and his wife are both in possession of land and both have deeds from the same grantor, that of the wife being prior in time, the possession is that of the wife as the holder of the better title, and, in the absence of any divestiture of her title, she dies seized and possessed of it, though, at the time, she and her husband reside elsewhere.

3. HUSBAND AND WIFE. *Tenancy by curtesy initiate. When abolished.*

    The estate by curtesy initiate was not abolished in this state until the adoption of the code of 1880, although, by previous legislation, it had been converted from a vested into a contingent estate.

4. SAME. *Conveyance by husband. Disseizin of wife. Code 1871, § 2323.*

    A sale and conveyance by a husband, in 1877, of land in which he had a tenancy by curtesy initiate, under which the purchaser then went into possession and thereafter claimed the property, did not, either upon general principles of law or in view of § 2323, code 1871, depriving the acts of the husband of such effect, so disseize the wife as to put the statute of limitations in operation against her heirs on her death, in 1879, and it is immaterial that the husband, at the time of his conveyance, held a subsequent deed from the grantor of his wife.

73 Miss.—54

5. ESTOPPEL.  *Subsequent conversation of wife with husband's grantee.*

> The fact that a wife to whose land her husband had executed a con-
> veyance without her joinder, afterwards, in conversation with the
> grantee, spoke of his purchase and expressed a desire that he
> should build on the land, does not estop her heirs to dispute his
> title.

6. LIMITATION OF ACTIONS.  *When bar attaches.  Code* 1892, § 2731.

> Under § 2731, code 1892, no claim is barred until the limitation of
> the statute has accrued, and the fact that, in consequence of the
> laches of the complainants, their proceeding lacks but a few days
> of being barred, is no defense to a bill to remove a cloud upon
> their title.

FROM the chancery court of Yalobusha county.
HON. B. T. KIMBROUGH, Chancellor.
The facts are stated in the opinion of the court.

*R. H. Golladay*, for appellant.

The bill, before amendment, would necessarily have been
dismissed.  Complainant must be the real owner, and satisfy
the chancellor that the adverse claim is shadowy, etc.  *Watson*
v. *Tusten*, 49 Miss., 575; *Griffin* v. *Harrison*, 52 Miss., 826;
*Handy* v. *Noonan*, 51 Miss., 170.  Complainant must show
clearly the invalidity of his opponent's title, and the validity
of his own.  *Handy* v. *Noonan, supra; Railroad Co.* v. *Neigh-
bors*, 51 Miss., 420.

A bill is not maintainable if it alleges that complainant is the
true owner by purchase from one whose title it fails to show.
*Harril* v. *Robinson*, 61 Miss., 153.  The complainant must
show such title, legal or equitable, as would enable him to re-
cover in ejectment, the title being legal.  *Chiles* v. *Gallagher*,
67 Miss., 423; *Wilkinson* v. *Hiller*, 71 Miss., 679.  True, the
better title from a common source entitles to relief.  *Bank* v.
*West*, 67 Miss., 729.  It did not appear, before amendment,
that complainant and defendant claimed from common source.
That appeared by the answer, and could not be availed of by
complainant.  If a demurrer would hold to a bill, the courts

will not grant relief on the hearing, even though defendant answers. Story on Eq. Pl., § 257. No relief is granted on facts not alleged in the bill, though such facts be apparent from other parts of the pleadings and evidence—*secundum allegata et probata.* Story on Eq. Pl., § 257; 11 Pet. R., 229; 4 How. (U. S.), 298; Geo. Dig., 897; *Tierney* v. *Klein,* 67 Miss,, 173.

The chancellor, in vacation, had no power to allow the amendment, in the absence of, and without the knowledge of, defendants, and without opportunity to answer or amend. Such amendment could be allowed by the court only. The doctrine of amendment does not permit such practice. Code 1892, §§ 542 *et seq.,* and cases cited under § 542.

It is claimed by the bill that N. P. Ragan was tenant by the curtesy in the land claimed. This position was abandoned at the hearing, in view of *Stewart* v. *Ross,* 50 Miss., 776, and there was no dispute that N. P. Ragan's curtesy right was limited to "real estate" of which his wife, N. J. Ragan, died seized and possessed. Code 1871, § 1786. She never was seized and possessed of the land claimed in this suit. The deed by Azlin and wife to her was made in May, 1866, and, in less than a month afterwards, Azlin and wife conveyed the land to N. P. Ragan, and N. P. Ragan went into possession. She died in February, 1879. N. P. Ragan took possession, and, in 1877, conveyed to Clark. There was no evidence to show under what title N. P. Ragan took possession; presumably, his own. She did not die seized and possessed. Years before her death, she and her family removed permanently to another residence in Water Valley, in which residence she died. The land in controversy had gone into the possession of Clark, vendor of appellant and vendee of N. P. Ragan. She knew of the sale to Clark, and expressed her approbation, and preferred no claim. Seizin is either in fact or in law. To constitute seizin in fact, there must be actual possession. An example of seizin in law is where an ancestor or devisor dies leaving his land vacant. 1 Wash. R. Prop., p. 47. The law deems every possessor to

be in the legal seizin and possession of the land to which he has a complete and perfect title. Angell on Lim., § 384. A true and perfect title must be derived from the government. The limitation of ten years confers title, but the limitation does not run until title has passed out of the government. *Redfield* v. *Parks*, 132 U. S., 239; 44 N. H., 462; 68 Miss., 159; 40 Miss., 504; 70 Miss., 581. Mrs. Ragan did not have a perfect and complete title, and Clark had possession before and at the time of her death, and N. P. Ragan was not a tenant by curtesy, and there was no obstruction to complainants' suit the moment their mother died. More than ten years has elapsed since her death. A court of equity will refuse to aid a complainant if guilty of laches, though the statutory bar has not elapsed. Pom. on Eq. Jur., §§ 418, 419; 2 Story on Eq. Jur., § 1520; 96 U. S., 617, and cases cited; *Abraham* v. *Ordway*, 158 U. S., 420; 12 Am. & Eng. Enc. L., 550, 572; *Patrick's heirs* v. *Chenault*, 6 B. Mon., 315. In Mississippi, by the statute and decisions, when the bar has attached at law, equity is controlled by it; but when the bar has not attached, equity, in a proper case, will refuse its aid by virtue of its inherent powers. 1 Pom. on Eq., § 419.

Mrs. Ragan estopped herself by her language and conduct to Clark. In conscience, she ought, when advised of Ragan's sale to Clark, to have set up her claim. She not only did not do so, but actually led him to believe that she approved it. When silence becomes fraud, it will operate as an estoppel. 55 Miss., 261; *Dickson* v. *Green*, 2 Cush., 612; *Nixon* v. *Car Co.*, 6 Cush., 414.

*Kimmons & Kimmons*, for appellees.

The chancellor decided the case on the facts, and his findings on that branch of the case will not be disturbed. *Neblett* v. *Neblett*, 70 Miss., 572. Mrs. N. J. Ragan was a *feme covert* at the time of her death, seized and possessed of the land in controversy and her husband was the owner of an estate by

curtesy during his life, and no right of action accrued to com-
plainants until his death in 1883. This suit was brought be-
fore ten years had elapsed from his death. The owner of a
reversion or remainder has no right of action for the possession
of land until the termination of the particular estate. If Mrs.
Ragan died seized and possessed of the land, her husband took
an estate by curtesy. Code 1871, § 1786. Did N. P. Ragan
take an estate by curtesy? If so his vendees had a right to
the possession of it until his death. It was her separate real
estate. Code 1857, art. 23; Code 1871, § 1778. She had
perfect title to the fee, duly registered, and was seized. She
had the right of entry and was possessed. 52 Miss., 546; 3
Wash. Real Prop., 121. Neither the deed of her husband nor
the possession acquired under it could affect that title nor her
right of entry. Code 1857, art. 38; Code 1857, art. 41;
Code 1871, §§ 2323 and 2326; 24 Miss., 261; 26 *Id.*, 579; 43
*Id.*, 614; 54 *Id.*, 50. She had not disposed of it, she had not
devised it, and it had not been sold under execution. She was
then seized and possessed. 50 Miss., 792. The words ''seized
and possessed,'' as used in § 1786, code 1871, simply mean
that the wife must have legal title and the right to actual
possession. Seized is to have a legal and valid deed and it reg-
istered. 52 Miss., 540; Code of 1871, § 2284; 1 Wash. Real
Prop., 181.

If Mrs. Ragan was seized of the fee, she owned an estate in
possession and was seized and possessed, although a trespasser
might have been living on the land and claiming it. *Day* v.
*Cochran*, 24 Miss., 261; *Rabb* v. *Griffin*, 26 Miss., 579; *Redus*
v. *Hayden*, 43 Miss., 633; 21 Am. & Eng. Enc. L., 1057; 3
Ohio St., 377; *Stewart* v. *Ross*, 50 Miss., 776; 1 Wash. Real
Prop., 181. The fact that third parties claim the land by deed
from the husband cannot change the rule as above stated, be-
cause it is expressly declared by § 2323, code of 1871, that no
alienation by the husband ''shall work any discontinuance'' of
the wife's estate and that she may enter, etc., after the death

of her husband.  *Day* v. *Cochran*, 24 Miss., 261; 1 Wash. Real Prop., 190.

Mere ability to sue does not impose an obligation to do so, hence where a married woman could have sued either with or without her husband after her marriage, she is not compelled to do so, nor will her failure to sue subject her to the plea of the statute of limitation.  *North* v. *James*, 61 Miss., 761.  It must, therefore, follow that Mrs. Ragan was seized and possessed at her death, and N. P. Ragan took an estate by curtesy.  Code 1871, § 1786.  N. J. Ragan was the true owner and her husband was a mere licensee.  5 Lawson's R. R. & P., 4355.  His grantees took only a license.  Their possession is subordinate to and not adverse to the true owner. 41 Miss., 521; Tyler on Ejectment, 879.  A claim not barred by the statute of limitations is not a stale claim.  70 Miss., 87; 61 Miss., 329.

The third defense relied on is that of equitable estoppel.  As to this, the mother said or did nothing in this direction, except to Clark—and that was after the purchase and payment—so, there is no estoppel.  No improvements were put on the place until she and Ragan both were dead, and Clark had sold to Hill, who put the house on it.  If there was any estoppel, it arose as to these complainants personally, and, if there is any as to them, it arose solely on the ground of silence, negligence, or long acquiescence in the use, occupation, and improvement of the property by defendants.  Silence will estop only when it has induced such expenditures or act that one must suffer loss. 2 Pom. Eq. Juris., pp. 262, 264, 268; 47 Miss., 599.  The one who acts on silence must be destitute of knowledge of the true state of the title, and all means of knowing.  2 Pom. Eq. Juris., pp. 264, 270.  Knowledge of his right by the silent one is indispensable.  2 Pom. Eq. Juris., p. 273.  Title to land which is of record will not be lost by silence.  2 Pom. Eq. Juris., p. 274.  The misleading party in any case will simply be postponed till the misled party is made whole.  In case of improvements,

he will own or get pay for them. 2 Pom. Eq. Juris., §§ 807, 257, and note.

WOODS, J., delivered the opinion of the court.

The appellees exhibited their bill in the chancery court of Yalobusha county for cancellation, as a cloud upon their title to the land in question, of the conveyances under which appellant claims, and praying for rents and general relief. They allege that they are the only children and heirs at law of Mrs. N. J. Ragan, who died February 1, 1879, seized and possessed of this land, and that they inherited the property from their mother, and are now the owners thereof in fee simple. They set forth the deraignment of their title " as fully as is now possible," in the language of the bill, and in this deraignment, as one of their muniments of title, they include and refer to the warranty deed to their mother from W. J. Azlin and his wife, L. A. Azlin, dated April 11, 1866, and duly recorded on April 16, 1866. They aver that, at the time of their mother's death, February 1, 1879, she had a living husband, one N. P. Ragan, and two children by him—these complainants—who were capable of inheriting from either parent, and that their father survived their mother about four or five years, dying October 16, 1883. They then aver that their mother acquired title to the land by deed from said Azlin and wife on said April 11, 1866, and that at that time, and at the date of her death, in 1879, they were the issue of the union of their mother and father, her husband, alive and capable of inheriting. They allege that their father, N. P. Ragan, had a life estate by curtesy in said land, and that the same, at his death in October, 1883, reverted to complainants, as the only heirs of their mother. The bill then shows that N. P. Ragan, their father, during his lifetime, and on the twenty-sixth day of November, 1877, conveyed by deed, to one John M. Clark, the part of the lot involved in this particular suit, and that said deed was duly recorded in the proper office, and afterwards—to wit: on December 1, 1884—

the said Clark attempted to convey said land by his deed to W. J. Hill, the appellant, and that this deed from Clark to Hill, which is of record, is void because made after the death of N. P. Ragan, and after his estate by curtesy, and the right or title of said Clark had ceased to exist. The complainants then aver that, notwithstanding the said Hill had acquired no title to or right of possession of the land, and notwithstanding the fact that the right of possession thereto accrued to complainants on the death of their father in October, 1883, he, the said Hill, had been in possession of the property since that date, enjoying its rents and profits, and wrongfully withholding the land from complainants.

The appellant answered, and denied that N. J. Ragan, the mother of complainants, died seized and possessed of the land in controversy, and states the truth to be that, on May 11, 1866, Azlin and wife conveyed the land to N. P. Ragan, the father of complainants, who thereafter held and claimed title to said land until November 26, 1877, when he conveyed the same to Clark, who, on December 1, 1884, conveyed to the respondent, and that said several parties took and held possession successively to the present time. The respondent, on belief, charges the fact to be that N. J. Ragan, the mother, never had possession or seizin of the land, nor ever claimed it. The answer admits that, as the bill averred, there is of record the copy of a deed purporting to have been executed by Azlin and wife to N. J. Ragan, dated and executed just a month before the date of the execution of the deed of May 11, 1866, to N. P. Ragan, but respondent, on belief, charges that the use of the initials N. J., in the deed, if so used, was a mistake either in the original draft or was erroneously so copied by the clerk of the registry office in recording the deed, and that N. P. were the initials intended, instead of N. J., for, says the answer, N. J. was the wife of N. P., and, yet, in the deed purporting to convey to her, the grantee was represented to be of the masculine gender. The answer charges on belief that N. J. Ragan had no separate

estate with which to purchase property, and that the deed of May 11, 1866, was made to correct the mistake in the deed of April 11, 1866, if, indeed, that deed was made to N. J. Ragan, or that the parties believing the first deed, in point of time, to have been made to N. P. Ragan, the second was made to him to embrace other property intended to be but not conveyed in the first deed. [It is a fact, we here state, that the second deed did embrace other property than that conveyed by the first deed in addition to that in the first.] It is denied by appellant, in his answer, that N. P. Ragan ever had a life estate by curtesy in the land, even if the deed from Azlin and wife conveyed to her the fee, because, as is averred, at the date of this deed to the wife, April, 1866, there was no such estate as that of tenancy by curtesy initiate in this state, and N. P. Ragan, as surviving husband, was only entitled to curtesy in the estate of which his wife died seized and possessed, and that when N. J. Ragan died, in February, 1879, she was not seized and possessed of this land, because before that time, in November, 1877, N. P. Ragan had conveyed the lot to Clark and put him in possession, and because Clark continued in possession, claiming the fee, until he sold the property to respondent. And so the answer charges that a right of action accrued, if at all, to N. J. Ragan on November 26, 1877, when Ragan conveyed to Clark and delivered possession, and, though she was then under disability of coverture, yet, when she died, in February, 1879, the complainants claiming under her are barred, because more than ten years had elapsed since her death and before this suit was instituted.

The answer states, finally, that the respondent began to have erected a dwelling on the lot and to make other improvements, and that complainants were then living in Water Valley, the town in which the lot is situate, and that one yet lives there and that the other did until about three years ago, and that they must have known that the respondent was making such improvements, yet they took no steps to make known their

claim, but stood by and silently witnessed the making of said improvements. Respondent asserts that he bought in perfect good faith, without knowledge of the deed from Azlin and wife to N. J. Ragan, complainant's mother.

After all the evidence was in, and after the cause had been set down for hearing, and during the progress of the argument of counsel, appellee's solicitors asked leave to amend their bill so as to show that complainants and defendants claimed from a common source, and that N. J. Ragan, their mother, through whom they claimed, and those whom she claimed under, had been in adverse possession for more than ten years. The decree of the court shows that leave was granted and that the amendments were made. The bill of exceptions shows that, during the argument and again after the argument had been concluded, complainants asked leave to amend their bill, "but the court took the case under advisement and stated that he would also take under consideration said application to amend. And afterwards, in vacation, when he had reached his conclusion, he made a memorandum in which he stated that he would allow the amendment asked for on trial and not then decided. And all the parties to this suit had notice of this memorandum, and it was filed with the clerk of the court, and [all parties] had such notice before any decree was signed by the chancellor."

Serious complaint is made by appellant of this action of the court. We are of opinion that no reversible error was committed. We doubt if the amendment was necessary. Complainants, by their bill and evidence, showed title from Azlin and wife; respondents, by their answer and evidence, claimed title from Azlin and wife, and thus it perfectly appeared that both parties claimed from this common source. But if the amendment should be held necessary, under the circumstances of this case, we do not think we ought to reverse for an error, if it were one, which took no one by surprise and which did no harm to appellant. The amendment simply made the com-

plainants technically aver a fact which everybody admitted without controversy, and which abundantly appeared in the whole case.

Mrs. N. J. Ragan and her husband had each a deed from the Azlins to the lot. Hers was the elder and better, if, indeed, the deed of April 11, 1866, was made to her. If there was no mistake in the making or copying of this deed by the clerk who recorded it, she was seized and possessed of the land. When she and her husband entered into possession, the law imputed that possession to the better title, and this rule, which imputes possession to the better title where two are in possession, is not to be disregarded because the better title in this case happened to be in the wife of him who had the inferior title. So, we repeat, it is not true that Mrs. Ragan was not seized and possessed of the land, nor ever was, if she had a good title.

The original deed from Azlin and wife to Mrs. Ragan has been lost, and could not be produced on the trial below. But the copy in the book of deed records shows that the initials of the vendee in that conveyance were copied by the clerk not once, or twice, even, but six several times, and, in each instance, there indisputably appears N. J., and not N. P. It staggers credulity to be asked to suppose that the clerk, in copying a paper before him, seven times failed to see that the letters were not N. J., as he copied, but N. P., as he did not copy. That the deed was correctly copied is, in effect, sworn to by two witnesses who saw it, or its indorsements, and this is supported by the evidence of witnesses who depose to the fact of Mrs. Azlin's claiming the property in her lifetime.

It is pressed upon us with great earnestness and ability that, if it be conceded that Mrs. Ragan was at one time seized and possessed of the land, yet, she was disseized by the conveyance of her husband to Clark and his possession thereunder, and that, therefore, the statute of limitation of ten years began to run on her death, in 1879, and therefore the claim of her heirs

is barred by that statute. This contention is thought to be
supported by the fact, as counsel suppose, that, in this state,
tenancy by curtesy initiate has been declared no longer to ex-
ist, and, hence, that appellant's vendor, Clark, took possession
in 1877, before Mrs. Ragan's death, under title to the fee, and
not as tenant of the curtesy estate initiate, there being no longer
such estate, as counsel in the twin case of *Hirsh* v. *Nash et al.*,
submitted with this cause and to be decided with it, distinctly
affirms. But the able counsel have misconceived the effect of
the decision on this point in *Stewart* v. *Ross et al.*, 50 Miss.,
776. That case does not hold that, under our statutes, the
estate by curtesy initiate had been abolished, but that such an
estate, by our law, had been converted from a vested to a con-
tingent estate. Clark took this estate by curtesy initiate under
his deed, and, upon the death of Mrs. Ragan, he became the
owner of the estate by curtesy consummate. That estate re-
mained vested in him until the death of the husband, in 1883,
when the right of entry of complainants arose, and the statute
began to run against them, if it ran at all, as to which we ex-
press no opinion, the decision of that question not being neces-
sary to the determination of this case.

We have already said that Mrs. Ragan was seized and
possessed of an estate in the land, and that she died seized and
possessed, although when that event occurred she was living
with her husband and family in their home on another parcel
of ground. She was not required to maintain, unbroken, a
possession by actual personal occupancy. Nor was any dis-
seizin wrought by the act of her husband in making his con-
veyance to her property and his purchaser entering thereunder.
Long ago, when the ancient common law of England was yet
hampered by lingering reverence for the surviving remnants
of principles forming parts of the feudal system, a discontinu-
ance of the wife's estate was held by the courts to be produced
by the feoffment of the husband, and this harsh rule had once
a precarious foothold in some highly respectable quarters even

in this country. But, independently of statutes, this relic of a system long dead and gone from the earth has, we believe and trust, in England and the United States, ceased to receive the reverence of judicial idolaters of whatever is hoary with age and sanctified by use whereof the memory of man runneth not to the contrary. For a very succinct and perspicuous discussion of this subject, see 4 Kent, 480, subtitle feoffment, where the modern doctrine is illustrated and enforced. See, too, the interesting case of *Miller* v. *Miller*, 33 Am. Dec., 157.

But there is no room for controversy in this state as to the effect of the deed from N. P. Ragan to Clark, or as to the rights of complainants after their father's death. Section 2323, code of 1871, is in these words, viz.: " No feoffment, fine, deed of conveyance, or other act, made, suffered or done by the husband only, of any lands, tenements or hereditaments, being the inheritance or freehold of the wife, during the coverture between them, shall work any discontinuance thereof or prejudice or affect the rights of the wife or her heirs, or such as shall, by her death, have right or title to the same; but the wife or her heirs, or such as may have right or title after her death, may, after the death of the husband, lawfully enter into such lands, tenements or hereditaments and hold the same according to the right of such heirs or other person thereto.''

It thus seems plain that the deed of Ragan to Clark of the land of his wife, during her coverture, did not work any disseizin, or prejudice the rights of the wife or of these complainants, her heirs, and that, after the death of the husband, Ragan, the right to lawfully enter into the land and hold the same by the complainants is perfect.

It is contended, however, for appellant that, even under the view of the rights of appellees which we have taken, the latter are estopped to deny appellant's title by reason of a conversation had with the mother of complainants with Clark, the vendor of appellant and the vendee of her husband, wherein she spoke of his having purchased the lot, and expressed her desire

that he should build on it. But this conversation could have exercised no influence over Clark in making his purchase, for, confessedly, he had then already purchased, and the only possible injury incurred by Clark in consequence thereof was the expenditure made by him in building. But, in the accounting between the parties to this suit, the learned and just chancellor who made the decree in the case has allowed the appellant the value of his improvements made after October 10, 1887, with interest thereon, and charged him with the rental value of the property from the same date, with interest thereon, and it thus appears that he has suffered no injury by any wish Mrs. Ragan may have expressed.

Finally, it is contended by counsel for appellant that, as ten years, lacking only four days, intervened between the death of N. P. Ragan, the father, and the date of the institution of this suit, a court of equity, in the exercise of its own inherent powers, independently of the statute of limitations, may and should refuse relief, on the ground of discouraging stale claims or gross laches, or unexplained acquiescence in the assertion of an adverse right. Much and excellent authority is cited by counsel in support of this proposition, but it has been decided that there is no such thing as a stale claim, properly so called in this state, and, by positive law, the statute of limitations is to be applied in our courts of equity as in our courts of law. With us no claim is barred until the limitation of the statute has accrued. Code 1892, § 2731.

*Affirmed.*