SHELL SOUTHWORTH ET AL. *v.* AARON BROWNLOW ET AL.

1. MARRIED WOMEN. *Coverture. Emancipation. Code* 1871, § 2323. *Code* 1880, § 1167. *Constitution* 1890, *sec.* 94. *Code* 1892, § 2289.

   Code 1871, § 2323, providing that no act of the husband should affect the wife's interest in land, ceased to be operative when married women were wholly emancipated from all disability on account of coverture. Code 1880, § 1167; Constitution 1890, sec. 94; Code 1892, § 2289.

2. ESTATES OF DECEDENTS. *Contract for sale of land. Specific performance.*
   Where the administrator of a decedent who contracted to convey lands is not a party to the suit, and complainant admits that the decedent was without title, specific performance of the contract should not be decreed.

FROM the chancery court of, second district, Carroll county.
HON. ADAM M. BYRD, Chancellor.

Brownlow and others, appellees, were complainants, and Mrs. Southworth and others, appellants, were defendants in the court below. From a decree in complainants' favor the defendants appealed to the supreme court.

The bill alleged that in February, 1880, W. B. Prince, the husband of one of the defendants, Mrs. Prince, and the father of the other defendant, Mrs. Southworth, owned certain described lands, and on that date executed a bond for title, in which he agreed to convey to complainants the lands upon their paying him $2,602 in six annual payments; that during the life of Prince they paid him large sums of money; that in 1893 Prince died, leaving a will, in which he devised the said lands to defendant, Mrs. Prince, and that complainants made large payments to the agents of Mrs. Prince, more than the balance due on the lands; that Mrs. Southworth claimed to be the owner of the lands, but complainants knew nothing of the nature of her title; that complainants, upon the execution

of the bond for title, entered upon the lands, but the bond for title did not describe the lands intended to be conveyed by it, and that the wrong description was used by the mutual mistake of complainants and W. B. Prince, and that it was intended to convey the land of which they were then in possession; that in December, 1900, Mrs. Southworth instituted an unlawful entry and detainer suit against complainants to oust them from the possession of said lands; that said suit was still pending in the circuit court. The prayer of the bill was for an injunction restraining defendant from further prosecuting said suit, for an accounting, and for an order requiring defendants to execute to complainants a deed conveying the lands described in the bill according to the terms of the bond for title as reformed, the reformation of which they prayed. Defendants answered, denying that the lands belonged to W. B. Prince in 1880, at the time of the execution of the bond for title to complainants, or at any time before or since that time, but alleged that the lands belonged to defendant, Mrs. Prince, by virtue of the deed of William Terry and wife to her in 1869. They alleged that Mrs. Prince sold the lands in January, 1897, to Mrs. Southworth. Defendants denied that they were in any way liable to account for the money paid to W. B. Prince during his lifetime; that they had ever recognized the title of complainants as purchasers. They admitted the suit of unlawful entry and detainer in the circuit court, and charged that complainants had attorned to them for rents of the lands, and that since the death of W. B. Prince complainants had been in possession of said lands as their tenants by virtue of a contract. They made their answer a cross-bill charging that the claim of complainants was a cloud upon their title, and asking that it be canceled. Complainants answered the cross-bill, admitting the deed of William Terry and his wife to trustees for Mrs. Prince, and that she conveyed to Mrs. Southworth, as stated in the answer, but set up as a defense that Mrs. Prince was estopped from claiming under said deed by the fact that she

knew and understood that complainants were contracting with W. B. Prince under the idea and belief that he was the legal owner of the lands; and they further set up title in themselves to said lands by virtue of their open, notorious, and adverse possession of the lands for over twenty years. They denied that they ever attorned to defendants, or in any way recognized their title. Upon these pleadings considerable proof was taken, and a final decree rendered dismissing the cross-bill of the defendants, and granting the relief sought by the complainants, and directing that the bond for title to complainants be reformed, and that defendants execute a deed to complainants conveying the land described in the bond for title as reformed, and perpetuating the injunction.

*Southworth, Hughston & McEachern,* for appellants.

Section 2323, Code 1871, which was effective at the time of the execution of the bond for title, governs rights accruing in February, 1880, of such heirs or other person thereto. *Carter* v. *Carter,* 14 Smed. & M., 59. Therefore the bond for title did not affect the rights of the wife of W. B. Prince to the possession of any of her realty. The possession of appellees, then, was subject to the right of lawful entry on the part of Mrs. Prince after the death of W. B. Prince, her husband. His death occurred in January, 1893. This right of entry was a vested right from the date of possession under the title bond, because there was a present fixed right of future enjoyment. 4 Kent Com., 202. No subsequent legislation could destroy this right. *Lyon* v. *Knott,* 26 Miss., 548; *Cameron* v. *Cameron,* 29 Miss., 112; *Walton* v. *Olive,* 29 Miss., 270; *Baygents* v. *Beard,* 41 Miss., 531; *Musgrove* v. *Railroad Co.,* 50 Miss., 677.

The law gave the appellant, Mrs. Prince, the lawful right of entry after the death of her husband, and the statute of limitation by adverse possession could not begin to run until January, 1893, the date of his death. The mere ability to sue does

not impose the obligation to do so. *North* v. *James,* 61 Miss., 761.

Under § 1881, Code 1892, the unpaid purchase money is declared to be assets of the estate to be administered, and stands chargeable with all just debts and funeral expenses of the deceased and the expense of settling the estate. The bill shows that the entire purchase money had not been paid at the time of the death of W. B. Prince; consequently the notes belonged to the administration of his estate, and not to Mrs. Prince, until the settlement of the affairs of his estate, which fact the appellants set up in their cross-bill.

Before it could be ascertained how much was due on said notes at the time of the death of W. B. Prince an accounting was necessary, and strict proof on competent evidence would be required under the law before the purchasers would be allowed any credit on the notes. Section 523, Code 1892. Appellees show no such accounting, and they seek none against the executor or administrator of said estate, who would be a proper party to this proceeding. If they should be allowed to establish claims or defenses against the heirs of said estate instead of against the executors, in matters properly belonging to the administration, no different rule should be required and the heirs should not be held to a stricter account in such matters than would the executor.

*Tackett & Smith,* for appellees.

The proof demonstrates beyond doubt that appellees have been in the open, notorious, continued, and uninterrupted possession of the land since 1880, claiming it as their own against every one except W. B. Prince; and, moreover, the law is that a vendee in an executory contract to convey land holds the same adversely to the claims of third parties other than the vendor. 1 Am. & Eng. Ency. Law (2d ed.), 800; 1 Cyc., 1049; *Graham* v. *Warren,* 81 Miss., 330.

And, besides, all questions of fact necessary to be decided by the court below were decided in favor of appellees, and will not be reviewed in this court.

It is contended, however, by appellants that the bar of the statute of limitation is not yet complete by reason of § 2323, Code 1871. This section is taken from the statute of 32 Henry VIII, ch. 28 (3 Blackstone, star paging 171; 2 Bacon's Abridg., star paging 91 and 92), and even before its enactment was a part of our common law (*Miller* v. *Miller,* 33 Am. Dec., 157; *Hill* v. *Nash,* 73 Miss., 860, 861), so that no new rights were conferred by it upon married women.

Under the 32 of Henry VIII, ch. 28, and the common law as construed in this country, a deed made by the husband during coverture of land owned by the wife, purporting to convey the fee, and under which the grantee entered into possession, operated as a disseizin of the wife after her discoverture; the statute of limitation beginning to run against her from the time of her discoverture.

A married woman becomes discovert, within the meaning of the statute of limitation, at the time disabilities of coverture are removed by law. *Lowe* v. *Fox,* 15 G. B. Div., 668, cited in 9 Am. & Eng. Ency. Law (2d ed.), 472, note 3.

Mrs. Prince, therefore, became discovert and the statute of limitation commenced to run against her on the 1st day of November, A.D. 1880. Code 1880, § § 2, 1167, and 2759; *Bridgeforth* v. *Payne,* 62 Miss., 777; *Hambrick* v. *Jones,* 64 Miss., 240.

Argued orally by *E. V. Hughston,* for appellants.

WHITFIELD, C. J., delivered the opinion of the court.

The proof clearly shows that appellees have been in open, notorious, and uninterrupted possession of the land since the attempted sale of it to them by W. Berry Prince, the ancestor of appellant, in 1880. Since the 1st of November, 1880, when

the revised code of 1880 went into effect, abolishing coverture, with all its incidents and disabilities, § 2323, Code 1871, ceased to operate. 9 Am. & Eng. Ency. Law (2d ed.), 472, note 3; *Miller* v. *Miller*, 33 Am. Dec., 157; *Bridgeforth* v. *Payne,* 62 Miss., 777; *Bradstreet* v. *City of Jackson*, 81 Miss., 233 (32 South., 999). The case of *Hill* v. *Nash,* 73 Miss., 849 (19 S. W., 707), does not contravene this view, for the statute of limitation was obviated in that case by reason of the existence of the estate by curtesy in the husband. Since coverture prevented, at common law, a married woman from suing, therefore, it was not right that any act of the husband should operate a disseizin of the wife as to any lands to which she had title, or in any way prejudice or affect her rights thereto. Since, therefore, the whole object of the said § 2323, Code 1871, was to prevent the wife from being prejudiced because of her coverture, it follows that, when coverture was wholly abolished, there was no longer any need for said statute. When the system of coverture fell, the statute (§ 2323, Code 1871) fell with it. More than ten years elapsed from the 1st of November, 1880, to the assertion in this suit of appellants' alleged rights under the deed to trustees for Mrs. Prince from her father. The appellees therefore have a perfect title by adverse possession. It was error in the court below to decree specific performance of the contract made by Mr. Prince, who had no title, and whose administrator was not made a party to the bill; but this error does not necessitate reversal. The chancellor found all the facts for the appellees, especially the fact that they had more than paid for the land; but appellees have taken no cross appeal with a view to recover such overpayment.

*We reverse and vacate so much of the decree as decrees specific performance, but the substantial part of the decree, which declares the appellees to be the owners of the lands involved, and perpetuates the injunction, is affirmed.*

*So ordered.*