# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-CA-01022-SCT

*KEVIN WESTON MacDONALD*

*v.*

*DIANE MacDONALD*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/29/94 |
| TRIAL JUDGE: | HON. ROGER C. CLAPP |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | STEPHEN L. BEACH, III |
| ATTORNEY FOR APPELLEE: | THOMAS T. BUCHANAN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 7/24/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/14/97 |

**BEFORE DAN LEE, C.J., BANKS AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. On September 14, 1994 Kevin Weston MacDonald and Diane MacDonald filed in the Chancery Court of Rankin County a Consent Motion for divorce on the ground of irreconcilable differences. The parties agreed that Diane MacDonald would have physical custody of the couple's two minor children, but left all other matters to be determined by the chancellor. The main issue at trial was what equitable interest, if any, Diane MacDonald had in her husband's business, the Terry Road Pawn Shop in Jackson. After hearing the evidence, the chancellor granted the parties a divorce and, among other things, found that Diane MacDonald had an equitable interest in the pawn shop. The chancellor ordered Kevin MacDonald to pay to Diane MacDonald, for her interest in the business, lump sum alimony in the amount of $12,000 per year for a ten year period. Aggrieved by the judgment, Kevin MacDonald appeals to this Court, assigning as error the following issue.

> **WHETHER THE CHANCELLOR ERRED IN ORDERING KEVIN MACDONALD TO PAY TO DIANE MACDONALD, FOR HER EQUITABLE INTEREST IN THE TERRY ROAD PAWN SHOP, LUMP SUM ALIMONY IN THE AMOUNT OF $12,000 PER YEAR FOR A TEN YEAR PERIOD.**

## FACTS

¶2. Kevin Weston MacDonald and Diane MacDonald were married on June 18, 1983. The couple lived in Laurel, Mississippi, and had two children, Christian, age ten at the time of trial, and Weston, age seven. From the time of the marriage until 1990, Kevin, who had a high school diploma and two years of junior college, moved among approximately five different jobs involving sales. His employers included Southern Beverage Company, Jones County Building Supply, B-95 radio station and Headrick Sign Company. He also did odd jobs on the weekends such as selling bar stools and fireworks to supplement his income of about $12,000 to $15,000 per year.

¶3. Diane, who had a high school education, moved among various jobs involving secretarial work, sales, customer service, accounts payable and receivable, permits, and dispatch. Her employers included the Jones County Youth Court, Kemlube Corporation, Laurel Brick and Tile, Howard Industries and Howard Transportation. Diane took time off from work when she had her children, and she also performed the domestic duties of cooking, cleaning and caring for the children.

¶4. In late 1989, Kevin was presented with the opportunity to purchase the Terry Road Pawn Shop in Jackson. The purchase price was $15,000, which the MacDonalds did not have. Kevin made arrangements to borrow $10,000 from the First National Bank of Picayune, but the bank insisted on a co-signor. Kevin's father, Fred MacDonald, co-signed the note to borrow the money, and Kevin purchased the pawn shop in January of 1990. According to Kevin, his father wanted to obtain a vested interest in the pawn shop until such time as the note was paid off, so on January 15, 1990 Kevin and his father entered into a partnership agreement assigning 75% interest in the pawn shop to Kevin and 25% interest to his father. Although Kevin testified that under the partnership agreement his father was a "silent partner," the agreement provided that each partner would have an equal voice in the management of the business and that each partner would devote time to the conduct of the business.

¶5. The evidence showed that virtually none of the terms of the partnership agreement were ever adhered to. For example, the agreement provided for separate capital accounts for each partner, for the division of profits and losses, and for separate income accounts for each partner, none of which provisions were ever observed. Furthermore, the agreement provided for the termination of the partnership upon the death of either partner, at which time the surviving partner could either purchase the deceased partner's interest or liquidate the business. Kevin's father died in 1992, but Kevin never paid his father's estate for his father's partnership interest nor did he liquidate the pawn shop.

¶6. Paul Shelton, Kevin's Certified Public Accountant, testified that Kevin never told him of the existence of a partnership agreement regarding the Terry Road Pawn Shop, and that Kevin, on his and Diane's joint tax returns, indicated that the pawn shop was a sole proprietorship. Diane testified that she was led to believe that the partnership agreement was necessary only for the purchase of the pawn shop, and that Kevin told her that she and Kevin would be partners in the store -- that it was their store and they would run it together.

¶7. After the purchase of the pawn shop, neither Kevin nor Diane held other employment. The parties commuted from Laurel to the pawn shop during the period from January to April 1990, when they moved in with Diane's father in Brandon, Mississippi for a month, after which they moved into an

apartment in Pearl, Mississippi. Diane testified that in addition to her domestic duties, she worked in the pawn shop three to four days per week, during which time she handled paperwork and police reports for loans, purchases and sales, handled the pawn shop's banking matters and the couple's joint checking account, and ran errands such as cashing in "scrap" gold. Also, for three weeks in July of 1990 and during the Christmas holidays, Diane managed the store alone while Kevin was out of town selling fireworks.

¶8. In September of 1992, the parties got into a dispute over the management and ownership of the Terry Road Pawn Shop. The couple separated, after which Diane, at Kevin's request, no longer worked at the pawn shop or contributed to its management. Although the record is unclear, the parties apparently initiated divorce proceedings for which a temporary hearing was held on December 11, 1992. At the hearing, the chancellor ordered Kevin to pay to Diane $880 per month in temporary child support and $700 per month in temporary alimony. From January 1993 until the time of trial, Diane received $2000 per month from Kevin.

¶9. On September 14, 1994 the parties withdrew their fault grounds for divorce and filed a Consent Motion for divorce on the ground of irreconcilable differences. The parties agreed Diane would have physical custody of the two minor children and left all other matters to the discretion of the chancellor. The main issue at trial was what equitable interest, if any, Diane had in the Terry Road Pawn Shop.

¶10. At trial it was shown that the profits of the Terry Road Pawn Shop had increased significantly since 1990. The pawn shop had adjusted gross incomes of $15,542 in 1990, $73,422 in 1991, $100, 142 in 1992 and $112,098 in 1993. The store had a 1994 profit of $56,396 as of July 31, and the year was expected to finish well since the pawn shop did most of its business around the Christmas holidays. The accountant Paul Shelton calculated the net worth of the pawn shop as of December 31, 1993 to be $87,920. He testified that he arrived at this figure simply by subtracting the liabilities of the business from its assets, and that the figure did not represent the fair market value of the business. At the time of trial, Diane was working as an office manager at ADT Security Company, where she was earning $1,400 per month.

¶11. In his judgment, the chancellor granted the parties a divorce and set a schedule of child visitation rights for Kevin. The chancellor awarded to Diane child support in the amount of $1,400 per month and ordered Kevin to maintain major medical insurance for the benefit of the minor children and Diane. The chancellor ordered that Diane be allowed to claim the two minor children for purposes of state and federal income tax exemptions. He also provided for the division of personal property. The chancellor found that Diane was entitled to an equitable interest in the Terry Road Pawn Shop and ordered Kevin to pay her, for her interest in the store, lump sum alimony in the amount of $12,000 per year for a period of ten years, unless the parties could determine a current cash value and agree to a different method of payment. To secure payment, the chancellor ordered an equitable lien on all of Kevin's assets. The chancellor ordered that any claims which may be made by Kevin's family pursuant to the partnership agreement shall be the responsibility of Kevin. The chancellor found that Diane was not entitled to periodic alimony. Finally, the chancellor ruled that each party should pay his/her own attorney fees.

## DISCUSSION

**WHETHER THE CHANCELLOR ERRED IN ORDERING KEVIN MACDONALD TO PAY TO DIANE MACDONALD, FOR HER EQUITABLE INTEREST IN THE TERRY ROAD PAWN SHOP, LUMP SUM ALIMONY IN THE AMOUNT OF $12,000 PER YEAR FOR A TEN YEAR PERIOD.**

¶12. Kevin MacDonald puts forth several arguments as to why the chancellor erred in ordering this award to Diane.

### Applicable Law and Standard of Review

¶13. In *Hemsley v. Hemsley*, 639 So. 2d 909, 915 (Miss. 1994), this Court determined that marital assets subject to equitable distribution by the chancellor are any and all assets "acquired or accumulated during the marriage." A spouse who has made a material contribution toward the acquisition of an asset titled in the other spouse's name may claim an equitable interest in such jointly accumulated property. *Hemsley*, 639 So. 2d at 913; *Jones v. Jones*, 532 So. 2d 574, 580-81 (Miss. 1988). Assets are not subject to distribution where it can be shown that such assets "are attributable to one of the parties' separate estates prior to the marriage or outside the marriage." *Hemsley*, 639 So. 2d at 914.

¶14. This Court has for several years recognized that in making equitable divisions of marital property upon divorce, chancellors are not limited to considering only the earning and cash contributions of each party to the accumulation of the property, but rather "[i]t is sufficient contribution if one party renders services generally regarded as domestic in nature." *Draper v. Draper*, 627 So. 2d 302, 306 (Miss. 1993) (citing *White v. White*, 557 So. 2d 480, 485 (Miss. 1989)). "We assume for divorce purposes that the contributions and efforts of the marital partners, whether economic, domestic or otherwise are of equal value." *Hemsley*, 639 So. 2d at 915.

¶15. In *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994), we set forth the factors to be considered by chancellors when making equitable divisions of marital property:

1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:

a. Direct or indirect economic contribution to the acquisition of the property;

b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and

c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.

2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.

3. The market value and the emotional value of the assets subject to distribution.

4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by

inheritance or inter vivos gift by or to an individual spouse;

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,

8. Any other factor which in equity should be considered.

¶16. "In the final analysis, all awards should be considered together to determine that they are equitable and fair." *Ferguson*, 639 So. 2d at 929. The equitable distribution of marital assets is committed to the discretion of the chancellor, whose findings will not be disturbed by this Court unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. *Ferguson*, 639 So. 2d at 928, 930.

**A. Whether the chancellor failed to make proper and specific findings of fact and conclusions of law as required by this Court in *Ferguson*.**

¶17. In setting out the *Ferguson* guidelines to be followed by chancellors when evaluating equitable distributions of marital property, we directed chancellors "to support their decisions with findings of fact and conclusions of law for purposes of appellate review." 639 So. 2d at 928. Kevin argues that the chancellor below failed to make findings of fact and conclusions of law when evaluating the equitable distribution of interests in the Terry Road Pawn Shop. The chancellor's ruling, however, reveals that he did in fact make findings of fact regarding virtually every *Ferguson* factor and drew legal conclusions from those findings. Those findings and conclusions are discussed below.

¶18. *Substantial Contribution to the Accumulation of the Property.* The chancellor found that although Kevin was the primary economic contributor to the business, Diane's spousal, motherly and domestic efforts and her small economic and business contributions were significant and substantial. More specifically, the chancellor found that Diane's efforts, although a small economic contribution to the business, constituted a large contribution to the stability and harmony of the family and marital relationship. The chancellor also found that since neither party had any knowledge of how to run a pawn shop before Kevin bought the store and since the parties learned how to run the business together, Diane's efforts contributed to Kevin's training, accomplishments and earning power.

¶19. *Degree to Which Each Spouse Has Expended, Withdrawn or Otherwise Disposed of Marital Assets.* The chancellor found that neither party had significantly disposed of marital assets.

¶20. *The Value of the Assets Subject to Distribution.* The chancellor found the relevant value of the business to be $87,000 and that, as a matter of equity and because of her contributions, Diane should not be penalized for the success of the pawn shop without her during the previous couple of years. The chancellor also found as a matter of equity that the evidence justified no reduction in the value of the business because of the partnership agreement which showed "that at least at one point his father had an interest." The chancellor determined that any effect of that interest would be Kevin's

responsibility.

¶21. *Tax and Other Consequences, and Contractual or Legal Consequences to Third Parties, of the Proposed Distribution.* The chancellor found that his ruling would not disturb Kevin's favorable tax benefits under business law. The chancellor also determined that any claim made by Kevin's family pursuant to the partnership agreement would be Kevin's burden to bear.

¶22. *The Extent to Which Property Division May Be Utililized to Eliminate Periodic Payments and Other Potential Sources of Future Friction Between the Parties.* The chancellor declined to award periodic alimony to Diane, stating that the adjustment of the equities in this case was best accomplished with a lump sum.

¶23. *The Needs of the Parties for Financial Security with Due Regard to the Combination of Assets, Income and Earning Capacity.* The chancellor found that there was no evidence of any assets other than the pawn shop and the personalty that was divided. The chancellor found that Diane's adjusted gross income was $1,100 per month, that Kevin's adjusted gross income was $6,000 per month and that his earning power far exceeded Diane's.

¶24. *Any Other Factor Which in Equity Should Be Considered.* The chancellor found that any adjustment of the equities in this marital property should consider the "admirable" support payments made by Kevin to Diane during the separation, but not as a numerical setoff per se. The chancellor stated that he could not find, for example, that it would be fair to consider Diane as having already received her equity in the business. He stated that he considered this in arriving at what he believed to be a fair lump sum alimony.

¶25. The chancellor concluded that Diane was entitled to an equitable interest in the Terry Road Pawn Shop and ordered lump sum alimony accordingly. Clearly, the chancellor made sufficient findings of fact and conclusions of law to provide an adequate basis for appellate review. This argument therefore is without merit.

> **B. Whether the chancellor applied a clearly erroneous legal standard in misinterpreting this Court's decision in *Hemsley* and *Ferguson* and in failing to apply the *Ferguson* guidelines to the facts of this case.**

¶26. Kevin points out that this Court in ***Hemsley*** clearly and succinctly defined marital assets subject to equitable distribution upon divorce as "any and all property acquired or accumulated during the marriage." 639 So. 2d at 915. Kevin argues that the chancellor failed to follow this definition of marital assets and thus created "a decidedly inequitable result" and "a disastrous scenario." We fail to see, however, how the chancellor misapplied ***Hemsley***.

¶27. Kevin and Diane were married in 1983 and the pawn shop was purchased in 1990. Clearly, the business was acquired "during the marriage," and thus was subject to equitable distribution by the chancellor upon evaluation of the ***Ferguson*** guidelines. Kevin also contends that the chancellor failed to apply the ***Ferguson*** factors when considering his adjustment of the equities. As discussed above, however, the chancellor carefully considered and made extensive findings of fact regarding every applicable ***Ferguson*** factor before making his ruling. This argument also is without merit.

**C. Whether the chancellor was clearly erroneous and manifestly wrong when the partnership agreement between Kevin and his father was, for all intents and purposes, dissolved without notice to the estate and heirs of Kevin's father.**

¶28. Kevin argues that the chancellor erred in awarding to Diane an equitable interest in the Terry Road Pawn Shop without notice to the estate and heirs of Kevin's father, who had a partnership interest in the business. Kevin cites as authority the case of *Skinner v. Skinner*, 509 So. 2d 867, 870 (Miss. 1987), wherein this Court held that it was error for the chancellor to award corporate property to the wife in divorce proceedings where the corporation was not made a party to the proceedings. We find that this argument must fail.

¶29. In the case *sub judice*, the chancellor did not award to Diane any pawn shop property or assets, but rather awarded to her lump sum alimony to be paid by Kevin for her interest in the pawn shop. To secure payment, the chancellor awarded an equitable lien on all of Kevin's assets, which included his interest in the pawn shop. In *Lindsey v. Lindsey*, 612 So. 2d 376, 380 (Miss. 1992), this Court explained equitable liens as follows:

> Characteristic of equitable liens is that they are not estates or property in the thing itself, nor are they rights to recover the thing, that is they are not rights which may be the basis of a possessory action. They are merely a charge on property for the purpose of security, and are ancillary to and separate from the debt. They are neither debts nor rights of property, but merely remedies for a debt. Of extreme importance is the fact that *such liens do not divest the debtor of title or possession.*

¶30. The chancellor did not adjudicate the rights of Kevin's father's estate to an interest in the pawn shop, but rather specifically provided that any claim made by the estate pursuant to the partnership agreement would be the responsibility of Kevin, which we find was not an abuse of discretion since the evidence showed overwhelmingly that Kevin had operated and likely would continue to operate the store as a sole proprietorship.

¶31. Kevin complains that the chancellor's ruling, "for all intents and purposes," dissolved the partnership. To use Kevin's own language, however, it can be argued that the partnership was for all intents and purposes dissolved anyway, since the evidence showed that not a single provision of the partnership agreement was ever observed by either of the two alleged partners. Also, Mississippi's Uniform Partnership Act provides for the dissolution of partnerships "by the death of any partner unless the agreement provides otherwise." Miss. Code Ann. § 79-12-61(4) (1972). The partnership agreement in this case provided for the continuation of the partnership business in the event of a partner's death only if the surviving partner purchased the deceased partner's interest, which Kevin did not do. In any event, the chancellor below made no determination as to the status of the partnership. Although the chancellor found that "said partnership agreement is of no effect pursuant to the evidence before the Court," we believe that the chancellor meant only that the evidence of the agreement was insufficient in this case for him to consider it in making his award. The chancellor did not dissolve or rule on the status of the partnership, but instead ruled that if and when such determination is made, any claim made by Kevin's father's estate shall be the responsibility of Kevin.

¶32. Kevin also complains that the chancellor ignored the tax consequences and effects which the ruling would have on the partnership. On all of his joint tax returns with Diane, however, Kevin listed

the income of the pawn shop as that of a sole proprietorship. It is therefore difficult to see what effect the chancellor's ruling would have on the tax situation of the alleged partnership.

¶33. We find that notice to Kevin's father's estate was not required in this case, and thus this argument is without merit. For the sake of clarity, we reserve the right of Kevin's father's estate to claim an interest in the Terry Road Pawn Shop.

> **D. Whether the chancellor's award to Diane of lump sum alimony in the amount of $12, 000 per year over a ten year period for her equitable interest in a business with a net worth of only $87,000 was clearly erroneous and manifestly wrong.**

¶34. Kevin first argues that the chancellor erred in determining the relevant value of the pawn shop to be $87,000. Kevin points out that although this figure represented the net worth of the business *at the time of the divorce*, the net worth of the business as of December 31, 1992 -- just after the *separation* -- was only about $47,000. Kevin argues that because Diane contributed no efforts to the management of the pawn shop after the separation, the chancellor should not have considered the increase in the store's value since that time.

¶35. Kevin cites no authority for the proposition that chancellors, when equitably dividing marital property upon divorce, may consider the value of the property only as of the time of the separation. Such consideration, as are all others in this context, is within the discretion of the chancellor. The chancellor below found that as a matter of equity and because of her contributions which enabled the business to improve and prosper, Diane should not be penalized for the success of the business without her after the separation. We find that such determination did not amount to an abuse of discretion.

¶36. Kevin argues that even considering the value of the business to be $87,000, it was clearly erroneous and manifestly wrong to award to Diane lump sum alimony in the amount of $12,000 per year over a ten year period, for a total of $120,000. We find that this argument must fail for several reasons.

¶37. First, the $120,000 awarded to Diane does not represent a present cash value, but rather represents her interest in the business amortized over a period of ten years. The chancellor gave the parties the option of agreeing upon a current cash value and a different method of payment. Also, as the accountant Paul Shelton testified, the net worth of the store did not represent its fair market value, but rather simply constituted its assets minus its liabilities. In its last full year of business prior to the divorce, the pawn shop earned a net profit of about $112,000, which constituted another in a series of steady increases over the years since the store was purchased, and which by all indicators was likely to continue to increase in the following years. We find that it was not manifestly unfair for the chancellor to award to Diane, for her interest in the store, ten annual payments of only about 10% of its 1993 adjusted gross income. Furthermore, under the guidelines laid out in *Ferguson*, the value of the marital property is only one of several factors which the chancellor must consider.

¶38. In accordance with *Ferguson*, the chancellor also considered the needs of the parties for financial security with due regard to the combination of assets, income and earning capicty, and the extent to which property division may be utilized to eliminate periodic payments and other potential sources of future friction between the parties. Finding that there were no marital assets other than the

pawn shop and personal property, the chancellor noted that Kevin enjoyed an income almost six times greater than Diane's meager income of $1,100 per month, and that Kevin's earning power far exceeded Diane's. Also, in light of his lump sum award, the chancellor declined to award periodic alimony to Diane. Since "fairness is the prevailing guideline in marital division," we find that the chancellor's lump sum award to Diane for her interest in the pawn shop was not an abuse of discretion or manifestly wrong.

¶39. Kevin also complains that he was given no credit for his $2,000 monthly payments to Diane from the time of the temporary hearing to the time of the divorce. However, $1,580 of each $2,000 payment was paid pursuant to a chancery court order of temporary child support and alimony. Regarding the extra $420 paid each month, "a party making an extra-judicial modification does so at his own peril." *Crow v. Crow*, 622 So. 2d 1226, 1231 (Miss. 1993). The chancellor stated that he considered Kevin's "admirable" support payments during the separation in arriving at a fair lump sum award, but that the payments were not considered as a numerical setoff against Diane's interest in the pawn shop. Such determination was not an abuse of discretion.

> **E. Whether the chancellor committed error in calculating Diane's material contributions to the business and to the marital relationship as a whole.**

¶40. The chancellor's findings regarding this *Ferguson* factor, discussed above in argument "A," are set out again here. The chancellor found that although Kevin was the primary economic contributor to the business, Diane's spousal, motherly and domestic efforts and her small economic and business contributions were significant and substantial. More specifically, the chancellor found that Diane's efforts, although a small economic contribution to the business, constituted a large contribution to the stability and harmony of the family and marital relationship. The chancellor also found that since neither party had any knowledge of how to run a pawn shop before Kevin bought the store and since the parties learned how to run the business together, Diane's efforts contributed to Kevin's training, accomplishments and earning power. In light of the evidence before this Court, these findings were not manifestly wrong or substantially erroneous, and thus this argument is without merit.

## CONCLUSION

¶41. Finding no merit among Kevin's arguments under his assignment of error, we affirm the chancery court judgment below.

¶42. **AFFIRMED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS AND SMITH, JJ., CONCUR. DAN LEE, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE AND ROBERTS, JJ. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., AND ROBERTS, J**.

> **DAN LEE, CHIEF JUSTICE, DISSENTING:**

¶43. The parties to this case obtained a divorce on the ground of irreconcilable differences, and came to an agreement as to the custody of their two children. The main issue which they left for the chancellor concerned the amount of equitable interest, if any, that Diane held in the Terry Road Pawn Shop. The pawn shop was purchased by Kevin three years prior to the divorce proceedings for $15,000 dollars, and testimony suggested that Diane had since that time assisted both in the pawn shop and with the domestic requirements of the family. The chancellor determined that Diane was entitled to an equitable interest in the pawn shop, and as a result ordered that Kevin pay her for this interest. It was determined in the lower court that the device of lump-sum alimony was appropriate to compensate Diane for her interest in the property, and the chancellor ordered that Kevin make payments totaling $120,000 over a period of a decade, payable at the rate of $12,000 each year, despite the fact that the total net worth of the business was determined to be only $87,920. Aggrieved, Kevin filed timely notice of appeal and raises the assignment of error discussed below. The majority would affirm. I respectfully dissent.

**WHETHER THE CHANCELLOR ERRED IN ORDERING KEVIN MacDONALD TO PAY DIANE MacDONALD FOR HER EQUITABLE INTEREST IN THE TERRY ROAD PAWN SHOP, LUMP SUM ALIMONY IN THE AMOUNT OF $12,000 PER YEAR FOR A TEN-YEAR PERIOD.**

## DISCUSSION

¶44. The majority, citing *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994), correctly sets out the factors to be considered by chancellors when making equitable divisions of marital property. However, in its discussion of the *Ferguson* factors in the chancellor's findings of fact, the majority overlooks a very important one: "3. **The market value** and the emotional value of the assets subject to distribution." *Id*. at 928 (emphasis added). *Ferguson* goes on to say that the "property division should be based upon a determination of **fair market value** of the assets . . . . " *Id*. at 929 (emphasis added). The chancellor stated in his findings that the relevant value for purposes of the distribution, the total net worth of the property, was $87,920. Then, without explanation or reference to his earlier finding, the chancellor found that Diane's interest in the shop was worth $120,000.

¶45. When the *Ferguson* factors are applied properly, it is simply not possible that a spouse's equitable interest in a single piece of property is greater than the value of the entire property. The majority blithely glosses over such inequity, opining that the $120,000 represents the amortized value of Diane's present interest in the shop over a period of ten years with annual payments of $12,000. In other words, in the view of the majority, the chancellor is simply charging Kevin interest for the time it takes to pay back Diane's equitable share. Even assuming that this is what the chancellor intended, the majority's argument ignores the fact that *Ferguson* requires more than the mere speculation of the appellate court to substantiate an equitable division of property.

¶46. It is axiomatic that the chancellor has broad discretion to divide real property and to award alimony where such division does not accomplish the overall goals of equitable distribution, *Ferguson*, 639 So. 2d at 926. It is also established that chancellors may assign interest to such awards, *Overstreet v. Overstreet*, 692 So. 2d 88, 91 (Miss. 1997); *Abshire v. Abshire*, 459 So. 2d 802, 805 (Miss. 1984); *Horton v. Horton*, 301 So. 2d 305, 307 (Miss. 1974); *Aldridge v. Aldridge*, 27 So. 2d 884, 886 (Miss. 1946). However, neither of these general precepts abrogate the mandate in

*Ferguson* that the chancellor provide "findings of fact . . . together with the legal conclusions drawn from those findings." *Ferguson*, 639 So. 2d at 929.

¶47. Under *Ferguson,* if the chancellor intended to award an amortized amount, then this Court is entitled to findings as to the principal amount that the chancellor relied on in determining the ultimate liability of the payor spouse, or at the very least, a statement, on the record, of what interest rate the chancellor intends to charge against the payor spouse. In the instant case there is simply no indication whatsoever what the chancellor intended when the award was made, only a finding of $120,000 due, despite the fact that Diane's equitable share of the value of the business is only $43,960. This is error under *Ferguson*.

¶48. This Court has previously said that we will not hesitate to reverse if we determine that an erroneous legal standard was applied. *Box v. Box*, 622 So. 2d 284, 287 (Miss. 1993). Because the *Ferguson* factor concerning the valuation of property was not properly applied, we should reverse and remand to the chancery court for an on-the-record application of the factors and a determination of the market value of the pawn shop, as well as a determination of the sum necessary to compensate Diane for her equitable interest in the shop.

¶49. Were this Court to remand, the chancellor should also closely revisit the application of the *Ferguson* factor which takes into account "any other factor which in equity should be considered." The over-payment made by Kevin to Diane during the temporary support period amounted to $420 per month more than the temporary support order required him to pay. After Kevin dutifully paid the same amount each month for twenty months, the overpayment totaled $8,400. Despite the fact that this overpayment was not disputed by Diane, and that the chancellor recognized the payments as admirable, the chancellor provided Kevin with no numerical set-off. Kevin has argued that the failure to do so constitutes an abuse of discretion. I agree.

¶50. The majority, citing *Crow v. Crow*, 622 So. 2d 1226 (Miss. 1993), states that "a party making an extra-judicial modification does so at his own peril." While this is certainly true of one seeking to reduce or modify the terms of payment of child support, *Crow* also made clear that "the rule is that a father may receive credit for having paid child support where, in fact, he paid the support directly to or for the benefit of the child, where to hold otherwise would unjustly enrich the mother." *Id.* at 1231 (citing *Alexander v. Alexander*, 494 So. 2d 365 (Miss. 1986)).

¶51. In the instant case, unlike *Crow*, it is undisputed that Kevin sent the money directly to Diane for child support, and the chancellor himself recognized this. To now hold that Kevin should receive no credit for the $8,400 paid above and beyond the court-ordered support constitutes a windfall for Diane.

¶52. While this Court should not completely relieve a party of an alimony obligation due to alleged earlier generosity, neither should our decisions concerning such payments be so draconian as to discourage a spouse from any thought of sending the financially weaker party more than is required by the court during the temporary alimony period. In light of the certainty of the payments made by Kevin, failure of the court of equity to give some form of credit to this overly-cooperative litigant seems particularly harsh, and in my opinion amounts to an abuse of discretion.

¶53. Because the chancellor erred in effecting the division of property by awarding Diane a lump sum

amount greater than the value of the entire property, I would reverse and remand for a determination of the market value of the pawn shop as of the date of trial, September 14, 1994, and Diane's equitable interest therein. Therefore, I dissent.

**McRAE AND ROBERTS, JJ., JOIN THIS OPINION.**

### McRAE, JUSTICE, DISSENTING:

¶54. The chancellor's lump sum award to Diane MacDonald for her interest in the pawn shop was an abuse of discretion. Therefore, I dissent.

¶55. The chancellor determined that the device of lump sum alimony was appropriate to compensate Diane MacDonald for her equitable interest in the property. However, this should not be the case. Alimony is separate and distinct from equitable distribution of the property. In this case, if the pawn shop fails one year from now, the award of lump sum alimony, which cannot be modified, will have been assessed against Kevin MacDonald because of his interest in a business that failed. While the chancellor determined that Diane should not be penalized for the success of the business without her after the separation, neither should Kevin be penalized for the failure of the business after separation.

¶56. Despite the partnership agreement between Kevin and his father, the majority unfairly assesses all indemnifications and liabilities against Kevin, without giving any benefit to the agreement itself. This case should be treated no differently from a case where a father gives money to his son, and the son never put the money into his wife's name. The distribution would be outside of the marriage. Since the value of the pawn shop is $87,920 and Diane would be paid $120,000, she would receive a windfall in addition to her interest in the pawn shop. Finally, if the chancellor had ordered a true equitable distribution of assets, neither of the parties would be taxed. However, making the distribution a lump sum alimony makes the amounts taxable, creating a no-win situation for both Diane and Kevin.

¶57. It is for these reasons that I dissent. I would reverse and remand this case to the chancery court.

**LEE, C.J., AND ROBERTS, J., JOIN THIS OPINION.**