726 So.2d 1220 (1998)
Karan Rees McGEE, Appellant,
v.
Terry Wayne McGEE, Appellee.
No. 97-CA-00635 COA.
Court of Appeals of Mississippi.
December 30, 1998.
Christopher Farris, Hattiesburg, Attorney For Appellant.
*1221 Nancy E. Steen, Hattiesburg, Attorney For Appellee.
Before McMILLIN, P.J., and HERRING and KING, JJ.
HERRING, J., for the Court:
¶ 1. The Chancery Court of Forrest County, Mississippi, granted Karan Rees McGee (Rees)[1] a divorce from Terry Wayne McGee (McGee) on the grounds of adultery and equitably divided the marital property. Aggrieved of the judgment, Rees appeals asserting that the chancery court erred in: (1) awarding McGee a lien on the marital residence without requiring the joinder of all interested parties; (2) finding the residence was a marital asset despite the existence of a quitclaim deed previously executed by McGee; and (3) computing the equity established in the residence. We find that the chancellor abused his discretion, and therefore, we reverse and remand for further proceedings.

A. THE FACTS
¶ 2. Karan Rees and Terry Wayne McGee were married on November 14, 1980, in Forrest County, Mississippi, and lived together until December 17, 1994. During the marriage, the parties had two children: Kristen Mical McGee and Cydney Larken McGee. On July 3, 1996, Rees filed for divorce on the grounds of uncondoned adultery and desertion. Rees also alleged that irreconcilable differences had arisen between the parties which entitled them to a divorce. McGee answered and denied the allegations set forth in Rees's complaint. In a counterclaim for divorce, McGee admitted that the parties were entitled to a divorce based on irreconcilable differences. He also requested that the chancery court award him reasonable visitation with the children and equitably divide the marital property.
¶ 3. During a hearing on the matter, McGee admitted that he had engaged in several adulterous relationships during the course of his marriage to Rees. He also acknowledged that he suffered from an addiction to crack cocaine and crystal methamphetamine. However, McGee testified that he had participated in a rehabilitation program, and he had not abused drugs for approximately seventeen months. Additionally, McGee testified that he executed a quitclaim deed and transferred the title to the marital residence to Rees and his daughter, Kristen, to protect the property from a potential civil action filed against him. McGee presented evidence relating to the equity established in the residence. He alleged that there was $54,000 in equity in the residence at the time the parties separated in 1994.
¶ 4. Rees testified that McGee's addiction to drugs resulted in a substantial dissipation of the marital assets. She stated that McGee failed to provide any financial support to her or the children during or following his drug problem. Contrary to McGee's testimony, Rees alleged that the parties agreed to transfer title to the marital residence to avoid a future probate in the event something happened to either party. Rees also testified that McGee approved the encumbrance of a deed of trust on the property to assist in the support and maintenance of the minor children. Moreover, Rees asserted that she contributed $40,000 which she received from the sale of a previous residence toward the purchase of the marital residence. Rees disputed the amount of equity in the residence and asserted that the remaining equity after the residence was refinanced totaled approximately $30,000.
¶ 5. At the conclusion of the hearing, the chancery court judge granted Rees a divorce from McGee based on the grounds of uncondoned adultery and awarded Rees custody of the two children subject to reasonable visitation by McGee. The chancellor noted that Hemsley v. Hemsley, 639 So.2d 909 (Miss. 1994), Draper v. Draper, 658 So.2d 866 (Miss. 1995), and Ferguson v. Ferguson, 639 So.2d *1222 921 (Miss.1994) were applicable to the facts of the case. As a result, the court ordered McGee to pay $200 per month in child support. Although the court declined to adjudicate ownership of the residence, the court determined that McGee was entitled to an equitable distribution of the residence. Accordingly, the court awarded McGee the sum of $22,000 to be paid by Rees to McGee within 120 days of the entry of the final judgment. The court impressed a lien against the residence to secure payment of the award. The court also granted Rees ownership of the vehicles and then equitably divided the personal property of the parties. Aggrieved of chancery court's judgment, Rees now appeals to this Court.

B. THE ISSUES
¶ 6. Rees presents three issues on appeal which we take verbatim from her brief:
I. THE TRIAL COURT ERRED WHEN IT IMPRESSED A LIEN IN FAVOR OF TERRY McGEE UPON THE REAL PROPERTY WITHOUT JOINING KRISTEN McGEE, AN OWNER OF THE PROPERTY.
II. THE TRIAL COURT ERRED IN FINDING THE MARITAL HOME WAS A MARITAL ASSET IN SPITE OF THE TRANSFER OF APRIL 18, 1994.
III. THE TRIAL COURT ERRED IN COMPUTING THE AMOUNT OF EQUITY REMAINING IN THE MARITAL HOME.
C. ANALYSIS

I. DID THE TRIAL COURT ERR IN FAILING TO JOIN A PROPERTY OWNER WHEN IT IMPOSED A LIEN ON THE MARITAL RESIDENCE?
¶ 7. Rees asserts that the trial court erred in failing to join her daughter, Kristen, in the divorce action when it imposed a lien on the real property. She contends that Kristen was a joint, record owner of the residence at the time of the divorce, and therefore, her daughter was a necessary party to any action which would affect her interest in the property. Although Rees acknowledges that she did not raise the issue before the chancery court, she claims that such a failure does not waive her non-joinder claim on appeal.
¶ 8. In Lindsey v. Lindsey, 612 So.2d 376, 379 (Miss.1992), our supreme court discussed the effect of an equitable lien in divorce actions. Specifically, the court considered the effect of a chancellor's award of an equitable lien against a spouse's interest in the marital residence. Id. In finding that the chancellor's imposition of such a lien did not amount to an abuse of discretion, the court addressed the primary purpose of an equitable lien. Id. at 380. The court commented as follows:
Characteristic of equitable liens is that they are not estates or property in the thing itself, nor are they rights which may be the basis of a possessory action. They are merely a charge on property for the purpose of security, and are ancillary to and separate from the debt. They are neither debts nor rights of property, but merely remedies for a debt. Of extreme importance is the fact that such liens do not divest the debtor of title or possession.

Id.
¶ 9. Relying on Lindsey, the supreme court affirmed a chancellor's impression of an equitable lien in favor of a wife on her husband's assets, which included a partnership purportedly owned by her husband and her father-in-law, to secure an award of lump sum alimony. MacDonald v. MacDonald, 698 So.2d 1079, 1085-86 (Miss.1997). Although the husband asserted that the chancery court's imposition of an equitable lien effectively dissolved the partnership without notice to his father's estate, the supreme court rejected his argument. Id. at 1085. The court found that the chancellor did not award the wife any property or assets in the property nor did he adjudicate the rights of the father's estate to an interest in the property. Id. Consequently, the court concluded that notice *1223 to the father's estate was not required under the facts of the case. Id. at 1086.
¶ 10. Similarly, in the case sub judice, the chancellor did not award McGee an interest or right in the residence titled to Rees and her daughter, Kristen. Rather, the chancellor simply impressed an equitable lien on the property to secure the payment to McGee by Rees following an equitable division of the marital property. The chancellor specifically stated that the "[c]ourt declines to adjudicate absolute ownership" of the real property or "to affect [the] title to [the] real property and the property shall remain titled `as is.'" Although the chancellor impressed an equitable lien on the entire residential property, the record reveals that the chancellor clearly intended to place the lien only on the interest of his former wife. In fact, the chancellor stated in his opinion that Rees was obligated to pay McGee $22,000 within 120 days of the final judgment based on an equitable division of the marital property. (emphasis added). Because the equitable lien was merely a charge on Rees's interest in the property to secure the payment ordered by the court, there was no need to provide notice to Kristen or to join her as a party to the divorce proceedings. Accordingly, we find that this assignment of error is without merit.

II. DID THE TRIAL COURT ERR IN FINDING THAT THE RESIDENCE WAS A MARITAL ASSET SUBJECT TO EQUITABLE DISTRIBUTION?

III. DID THE TRIAL COURT ERR IN COMPUTING THE AMOUNT OF EQUITY ESTABLISHED IN THE MARITAL RESIDENCE?
¶ 11. Rees alleges that the trial court committed manifest error in finding that the residence was a marital asset subject to equitable distribution. She contends that McGee validly executed a quitclaim deed whereby he transferred his interest in the residence to Kristen and herself. Rees also claims that she contributed $40,000 to the purchase of the residence which she derived from the sale of her separate domicile. Furthermore, Rees argues that McGee failed to make any financial contributions to her or the children, and therefore, he was not entitled to the $22,000 awarded by the chancery court.
¶ 12. The Mississippi Supreme Court has defined "marital property for the purposes of divorce as being any and all property acquired or accumulated during the marriage." Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). Such marital assets acquired during the course of the marriage are "subject to equitable division unless it can be shown by proof that ... [the] assets are attributable to one of the parties' separate estates prior to the marriage or outside of the marriage." Id. at 914. Moreover, the supreme court has emphatically held that the formal state of the title is "no longer determinative in deciding a spouse's rights to the property." Maslowski v. Maslowski, 655 So.2d 18, 21 (Miss.1995) (citing Hemsley, 639 So.2d at 914).
¶ 13. In arriving at an equitable distribution of marital property, the supreme court has suggested that a chancellor consider the following guidelines enunciated in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss. 1994):
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.

*1224 3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.
The chancellor is afforded broad discretion, and we will not disturb the chancellor's finding of fact unless the chancellor was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Parker v. Parker, 641 So.2d 1133, 1137 (Miss.1994).
¶ 14. During the hearing, both Rees and McGee testified that they were married for fourteen years and were employed at the Credit Bureau of Hattiesburg, a business owned by Rees's parents. The parties informed the chancellor of their respective income, expenses, assets, and health conditions. Rees stated that she contributed $40,000 toward the purchase of the marital residence from funds derived from the sale of a separate domicile she owned prior to the marriage. According to Rees, McGee's addiction to crack cocaine and crystal methamphetamine resulted in a substantial dissipation of the couple's assets. Rees also testified that McGee failed to offer any financial support to her or the children, and he did not make any mortgage payments on the residence since August 1994. Additionally, Rees stated that she had to refinance the residence in order to satisfy McGee's debts and to cover general expenses incurred by the family. Rees estimated that the amount of equity in the residence totaled approximately $34,000.
¶ 15. McGee testified that the couple purchased six acres of real property and constructed a residence on the property in 1984. He stated that they accumulated valuable property during the course of the marriage, including three automobiles, hunting and fishing equipment, and other household items. According to McGee, the parties each earned a salary in excess of $50,000 per year from the credit bureau. McGee also asserted that he lived with Rees in her separate residence for three years, and he contributed to the mortgage payments and maintenance of the residence. Finally, McGee testified that the marital residence was valued at $120,000, and at the time of the separation, there was approximately $54,000 in equity in the residence.
¶ 16. After hearing all of the evidence, the chancellor concluded that the primary marital asset was the marital residence. The chancellor found that the residence was acquired during the course of the marriage, and he noted that Rees contributed $40,000 toward the purchase of the residence. The court concluded, in part, as follows:
The Court accepts as reasonable the assertion that its current market value is approximately $120,000. At the time of separation the equity in the home was approximately $54,000, but shortly thereafter [Rees] was required to make roof and other repairs (accomplished through re-financing) resulting in a reduction of the equity, as best the Court can glean from divergent figures coming from the two contenders, to approximately $45,000. It is recognized that during [McGee's] considerable troubles growing out of his drug addiction and an automobile accident ... in order to try to shield the home from liability which might be possible adjudged against him, [McGee] conveyed his interest in the home to [Rees] and their daughter, *1225 Kristen. Despite those maneuvers, it is the opinion of the Court that [McGee], as a matter of equity, is yet entitled to consideration for distribution of interest in the marital domicile. To accomplish that equitable distribution to [McGee] as to the marital domicile, the Court, rather than undertaking a disturbance of the present title status of the home, fixes an award of $22,000 to be paid to [McGee] by [Rees] within 120 days of the entry of Final Judgment herein, and impresses a lien in favor of [McGee] for said sum against the home property.
Furthermore, the chancellor concluded that there was nothing in the record to dissuade him from finding that during the time the parties lived together, "they commingled their earnings, and that from their earnings they acquired the various items of household goods and personalty...." Accordingly, the chancellor awarded, among other things, Rees title to the two automobiles and granted McGee an equitable lien of $22,000 in the marital residence.
¶ 17. We find that the chancellor erroneously concluded that the entire residential property was marital property subject to equitable distribution. The chancellor attempted to equitably divide the marital assets of the parties. However, the chancellor's finding that the entire equity in the residence constituted marital property was an abuse of discretion. In this case, Rees and McGee jointly conveyed the marital residence to Rees and their daughter, Kristen. Although the chancellor determined that the equity in the residence, which totaled approximately $45,000, was marital property subject to an equitable distribution, the valid conveyance executed by Rees and McGee altered the sum of the marital property. Following the conveyance, the amount of marital property titled in Rees's name totaled approximately $22,500 (one-half of $45,000). Through the execution of the quitclaim deed, the daughter was entitled to one-half of the remaining equity in the residence which was not marital property and therefore not subject to an equitable distribution.
¶ 18. While the chancellor considered the Ferguson guidelines, the chancellor employed a faulty starting point in his calculation of the marital property. The execution of the quitclaim deed by Rees and McGee significantly altered the composition of the marital property. The deed created a joint ownership interest by Rees and Kristen in the residence. As such, the marital property consisted only of the equity interest owned by Rees in the property. By concluding that the marital property consisted of the entire amount of equity in the residence, the chancellor improperly included Kristen's equity interest as marital property subject to an equitable distribution. Accordingly, we reverse and remand for further proceedings.
¶ 19. In so ruling, we recognize one of the oldest maxims of equity: "He who comes into equity must come with clean hands." The supreme court has refused to grant any relief to a party where the evidence supports a finding that the party entered the court with polluted hands. See Collins v. Collins, 625 So.2d 786, 789-90 (Miss.1993). In this case, the parties strongly dispute the purpose of the property transfer and the removal of disability of Kristen's minority. While McGee alleged that he transferred the real property to his wife and daughter to protect the property from a potential civil action in Tennessee, Rees contended that the parties legitimately transferred the property to avoid the need for a future probate and to mortgage the property to provide support and maintenance for the children. Assuming that the property was transferred to shelter its susceptibility to the Tennessee action, the result would be that both Rees and McGee came into court with unclean hands. To deny any relief in such a situation would likewise appear to be unfair and inequitable. The chancellor concluded that despite McGee's purported actions he was entitled to an equitable division of the marital residence. We do not find that the chancellor abused his discretion.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF FORREST COUNTY *1226 IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS. ALL COSTS OF THIS APPEAL ARE TAXED EQUALLY TO THE PARTIES.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, HINKEBEIN, KING, PAYNE and SOUTHWICK, JJ., concur.
NOTES
[1] To avoid any confusion, we will refer to Karen Rees McGee as "Rees" and Terry Wayne McGee as "McGee."