CANNON v. HOLBERG MERCANTILE CO. ET AL.

[66 South. 400.]

1. DEEDS. *Time of taking effect. Delivery. Judgment. Lien. Property subject to lien. Execution. Property subject to.*
    Title to property vests, not upon the signing and acknowledging of a deed, but upon its delivery.

2. JUDGMENT. *Lien. Property subject to lien.*
    Where the owner of a lot agreed verbally to sell it, for one hundred and fifty dollars, to H. who purchased a house and moved it on the lot, and borrowed on his note three hundred dollars with which to pay for the lot, and the expense of moving the house, and afterwards agreed to sell the lot and house to plaintiff's grantor for four hundred and fifty dollars, and deeds from the owner to H. and from H. to plaintiff's grantor were executed and simultaneously delivered by the owner's agent to plaintiff's grantors, who had them recorded in proper order and who paid four hundred and fifty dollars to the agent, who applied a part thereof in payment of H's notes and remitted the balance to his principal. In such case H. acted as a mere conduit through which title reached plaintiff's grantors, the real purchaser, and he therefore had no interest in the land to which a judgment lien could attach.

3. EXECUTION. *Property subject to.*
    Under the facts in this case, the only interest, if any, which H. had in the land, was that he held it momentarily in trust for plaintiff's grantor, since, where property is purchased and the legal title is taken in the name of one person, while the purchase price is paid by another person, a trust at once results in favor of the party who pays the price, and the holder of the legal title becomes a trustee for him.

4. SAME.
    Property so held in trust is not subject to sale under execution, and a judgment creditor attempting to do so cannot invoke the aid of section 2787, Code 1906, for the reason that the registry laws have no application to an estate of this character.

APPEAL from the chancery court of Winston county. HON. J. F. McCOOL, Chancellor.

Suit by P. J. Cannon against the Holburg Mercantile Company, and others. From a judgment dismissing the bill, plaintiff appeals.

In May, 1907, Mrs. E. F. Kennedy, through her agent and attorney, Z. A. Brantley, verbally agreed to sell W. H. Hathorn a certain lot in the town of Louisville, Mississippi, for the sum of one hundred and fifty dollars. As soon as this agreement was made, and before the sale was consummated, Hathorn purchased a house from the Merchants' & Farmers' Bank for the sum of one hundred and fifty dollars, and had it moved onto this lot. He also borrowed one hundred and fifty dollars from the bank, a part, if not all, of which was used by him to cover the expense of moving the house on the lot. He did not pay the bank for this house in cash, but gave it his note for the sum of three hundred dollars, the amount due it both for the house and for the money borrowed. Afterwards J. L. Cannon agreed with Hathorn to take the house and lot, paying therefor the sum of four hundred and fifty dollars; that is, he would pay the bank three hundred dollars due it by Hathorn, pay Mrs. Kennedy one hundred and fifty dollars, and receive from her a deed to the property. On November 4, 1907, Hathorn and Cannon called upon Mr. Brantley, Mrs. Kennedy's agent and attorney, for the purpose of consummating the purchase of the lot, told him of their agreement, and requested him to obtain from Mrs. Kennedy a deed to Cannon to the land, the consideration therein expressed to be four hundred and fifty dollars. Brantley advised them that the best thing to do was for him to obtain a deed from Mrs. Kennedy to Hathorn reciting the consideration as one hundred and fifty dollars, and that Hathorn could then execute a deed to Cannon. He told them that his reason for advising this course was that Mrs. Kennedy was not in Louisville, but was in Columbus, Mississippi, and that the matter would have to be arranged with her by correspondence; that she under-

stood that he was selling the land for one hundred and fifty dollars, and that, if he should recite in the deed a consideration of four hundred and fifty dollars, she would not understand it, and might think that he was selling the property for a greater amount than he had reported to her. This was agreed to by Hathorn and Cannon. Brantley then drew up two deeds, each bearing date November 4, 1907, one from Mrs. Kennedy to Hathorn, reciting the consideration therein to be one hundred and fifty dollars, and one from Hathorn to Cannon reciting a consideration therein to be four hundred and fifty dollars. He then forwarded the deed for Mrs. Kennedy's signature to her at Columbus, and she signed and acknowledged it on the 16th of November, 1907, and returned it to Brantley. When it was received by him he immediately notified Hathorn and Cannon, who came to his office on November 30th for the purpose of consummating the agreement entered into by them. What then occurred can best be told in Brantley's own language, he having testified as a witness in the cause:

"On November 30, 1907, the said W. H. Hathorn and J. L. Cannon called at my office and completed the agreement had on November 4, 1907, by the said W. H. Hathorn executing to J. L. Cannon a deed to the said lot of land for and at the consideration of four hundred and fifty dollars, which included the purchase price to Mrs. Kennedy, one hundred and fifty dollars, and the note in favor of the Merchants' & Farmers' Bank of three hundred dollars. When the said J. L. Cannon executed his check in favor of myself (Z. A. Brantley) for four hundred and fifty dollars, and that upon the receipt of said check of four hundred and fifty dollars I delivered the two deeds to J. L. Cannon, and went with him to the chancery clerk's office, and had the chancery clerk to record the deed from Mrs. Kennedy to W. H. Hathorn first and the deed from W. H. Hathorn to J. L. Cannon second. I then went to the Merchants' & Far-

mers' Bank, and paid them three hundred dollars out of said check, and took up the note of W. H. Hathorn, and remitted the balance, one hundred and fifty dollars, to Mrs. E. F. Kennedyy at Crawford, Mississippi. I will state further that W. H. Hathorn did not receive any part of said amount of four hundred and fifty dollars; that it was all handled by me and paid out just as stated. J. L. Cannon paid me a fee of ten dollars for drafting the deeds to said lot. At the time of this transaction I knew nothing of the Holburg Mercantile Company having a judgment against W. H. Hathorn; and, in fact, had I known this fact, I would have had these parties to have carried out the transfers just the same, as Hathorn was not receiving any part of the purchase money paid by the said J. L. Cannon, and that the said J. L. Cannon was only carrying out, with reference to said lot, the verbal agreement which I had had with the said W. H. Hathorn in May, 1907.''

On the 16th day of January, 1908, Cannon executed and delivered a deed to the property to appellant, who is his wife. On the 8th day of April, 1907, appellee Holburg Mercantile Company obtained a judgment against Hathorn in a court of a justice of the peace, which was enrolled in the office of the clerk of the circuit court of Winston county on the 29th day of May following. In December, 1909, execution was issued on this judgment, and placed in the hands of the sheriff, who was proceeding thereunder to sell this lot, when appellant filed her bill in the court below praying that the sale be enjoined. This bill, to which the judgment creditor and the sheriff were defendants, was, on final hearing, dismissed.

*Z. A. Brantley* and *H. H. Rodgers* for appellant.

We especially call the court's attention to the fact that no deed was ever delivered to W. H. Hathorn, and no legal interest whatever accrued to him by his verbal contract with Mrs. Kennedy for said land. On page 5, of W.

H. Hathorn's evidence in which he says that he never handled the deed or received same, that the deeds were sent to Z. A. Brantley and he delivered both deeds to J. L. Cannon. Now as a matter of fact, Cannon paid the purchase money for said land, and Hathorn had at no time any interest in said land subject to execution.

The real test is whether W. H. Hathorn had any interest in said land, that could have been subjected to the lien of said judgment. Our contention is that he had no interest in said land; the very day the deeds were delivered to J. L. Cannon, he then and there paid Mrs. Kennedy the sum of one hundred and fifty dollars, and the Merchants' and Farmers' Bank the purchase price of said house, and cost of moving same. Hathorn had no interest in said land neither legal nor equitable. *Simmons* v. *North*, 3 S. & M. 67; *Money* v. *Dorsey*, 7 S. & M. 15; *Hay* v. *Talleferro*, 8 S. & M. 727.

Now under section 2156, Code of 1906, the purchase money lien is a prior lien and even it extinguishes the homestead right, and there can be no homestead exemptions as long as the purchase money is due and unpaid, and in the case at bar, the appellant paid the purchase money for said land, and thereby appellant's title and legal rights are superior to appellee's. The appellant's right is founded upon the payment of the purchase money for said land and possession thereof.

Appellant's equities in said land are unquestionable for the reason that he paid the purchase money price for said land; Hathorn had no interest in said land whatever, and could not claim any at all, because the deed was without consideration, and had never been delivered. "The vendee had a lien upon the estate purchased; for the money he paid for same the judgment creditor has a lien, inferior in point of equity; 2 Storey Eq. 481.

The deed to W. H. Hathorn, when he paid the consideration, and it was not delivered to him, gave no right in the premises, and created within him no interest in said

land, and could not possibly benefit the appellee's position or strengthen his hopeless condition. *Wiley* v. *Howtower*, 7 S. & M. 15; *Chisholm* v. *Andrews*, 6 S. & M. 345, 57 Miss. 637.

The equitable lien of the vendor or vendee does not depend upon matter of record, nor upon express contract, but is implied from the presumed intentions of the parties; and whether it be treated as a trust or a natural equity, its very nature implies the existence of a title either legal or equitable in the vendee on which it may attach, and hence the vendor holds the purchase money in trust on failure of title for the vendee or person who pays the actual purchase money. *Servis* v. *Beatty*, 32 Miss. 52.

We submit that the appellant's vendor paid the purchase price for said land and went immediately into possession of same, and appellant is an innocent purchaser holding under the original vendor of said land as an innocent purchaser *bona fide* and for value. *Taylor* v. *Lowenstein*, 50 Miss. 278.

We submit that this honorable court should perpetually enjoin the sheriff from selling said land under said execution, and direct the lower court to enter upon a decree for appellant perpetuating the injunction.

*Jones & Woodward,* for appellee.

The citation of authorities by appellant are against her contention, and while not directly in point, tend to sustain our contention. Appellee's contention is, that the registry laws of the state of Mississippi settle this case and settle the same in its favor, and sustain the learned chancellor in giving the decree in favor of the appellee. See section 2782 of the Code of 1906. The agreed statement of facts sent up in this record is what we contend is the facts in the case, and not the statement made in the brief of appellant's counsel. We cannot see how the learned counsel for the appellant can invoke sec-

tion 2156 of the Code of 1906 in this case, as it certainly has nothing to do with cases involving the issue as shown by this record.

One of the contentions of appellant is, that the Merchants' & Farmers' Bank had a lien on the house sold of the judgment debtor, which was placed upon the land in question, for the purchase money, to wit: one hundred and fifty dollars. Said contention is without foundation either in law or in fact because of the intervention of appellee's judgment lien. The law makes no distinction between a purchaser for value without notice and a lienor without notice. See section 3079 of Mississippi Code of 1906.

Creditors who have obtained a lien by judgment, or otherwise, without notice, are placed on the same plane as purchasers for a valuable consideration without notice. Creditors embraced in section 2787 of Mississippi Code of 1906, are those who have obtained a lien. *Laughbridge* v. *Rowland,* 52 Miss. 546.

We submit that all the evidence in this record as to judgment debtors' parol agreement and purchase of land from Mrs. Kennedy, and Mr. Z. A. Brantley's understanding with judgment debtors about the one hundred and fifty dollars, to the bank for the purchase money of the house that was afterwards placed on the land, and all the parol testimony as to this sale of land, which was without notice to the appellee, is incompetent, and should not have been admitted on the trial by the learned chancellor, and should not now be considered by this honorable court. The statute of frauds will not allow the introduction and consideration of such evidence. The evidence had no place in trial of this kind, and should not be considered.

The contention of appellee, if sustained by this court, would overthrow our registry laws, and defeat the very ends of justice and the purpose for which the registry laws were enacted. Such secret trust and understand-

ings as are disclosed by this record, enable judgment debtors to make speculative profits and do the very things condemned by our registry laws. If judgment debtors can evade the payment of their just debts by such means as are invoked in this record, then our whole system of commercial laws would be a mere empty and meaningless thing, and then no one would be safe in his dealings, and his record liens would give him no protection and safety, and everything would be a risk and chance. Outside of the purchase money of the land and payment to the bank of one hundred and fifty dollars, there was still left one hundred and fifty dollars out of his profits to pay the judgment creditors, which should be done. So far as possession giving appellee notice is concerned, appellant's husband, under whom she claims, was renting this property from W. H. Hathorn and he was in possession at the very time of this transaction.

We think the decree of the chancellor is just, right and proper, and sustained by all the laws of the land, and should be sustained by this honorable court.

SMITH, C. J., delivered the opinion of the court.

(After stating the facts as above). The contention of counsel for appellees is that Mrs. Kennedy executed and delivered her deed to Hathorn some days prior to the execution and delivery of Hathorn's deed to Cannon; and that immediately upon the execution of the deed to Hathorn the judgment lien attached, and therefore Cannon and appellant, his vendee, acquired the land subject thereto.

Counsel for appellees are mistaken in saying that the deed from Mrs. Kennedy to Hathorn was executed and delivered some days prior to the execution and delivery of the deed from Hathorn to Cannon. The first of these deeds was signed and acknowledged some days prior to the execution and delivery of the second, but they were delivered simultaneously; and the title to property vests

not upon the signing and ackonwledging, of a deed, but upon its delivery. The actual delivery of the deed from Mrs. Kennedy was not to Hathorn, but to Cannon; both deeds—that is, Mrs. Kennedy's deed to Hathorn and Hathorn'h deed to Cannon—being delivered to Cannon simultaneously. This mistake of fact on the part of counsel for appellees, may, or may not, be material, but we prefer to decide the case upon the actual facts as presented by the record.

It will be observed from the statement of the case hereinbefore made Hathorn paid nothing on either the land or the house placed thereon, and that the deeds to and from Hathorn were simply used as a convenient method of vesting the title to the land in Cannon, who was the real purchaser. Hathorn acted as a mere conduit, through which title reached the real party in interest. He therefore had no interest in the land to which a judgment lien could attach. 2 Freeman on Judgments (4th Ed.), sec. 373.

Moreover, the only interest, if any, which Hathorn could be said to have had in the land by reason of this transaction was that he held it momentarily in trust for Cannon; for, "where property is purchased and the legal title is taken in the name of one person, while the purchase price is paid by another person, a trust at once results in favor of the party who pays the price, and the holder of the legal title becomes a trustee for him." 3 Pomeroy's Equity Jurisprudence, sec. 1037; *Walker* v. *Brungard,* 13 Smedes & M. 764; *Gee* v. *Gee,* 32 Miss. 192; *Gibson* v. *Foot,* 40 Miss. 788; *Brooks* v. *Shelton,* 54 Miss. 353; *Moore* v. *Moore,* 74 Miss. 59, 19 So. 953. Property so held in trust is not subject to sale under execution, and a judgment creditor attempting to do so cannot invoke the aid of section 2787 of the Code, as is attempted to be done in this case, for the reason that it has been expressly held, in *Kelly* v. *Mills,* 41 Miss. 267, *Miss. Valley Co.* v. *Chicago, etc., R. R. Co.,* 58 Miss. 848, that the

registry laws have no application to an estate of this character.

Reversed, and final decree here in accordance with the prayer of appellant's bill.

*Reversed.*