482 So.2d 228 (1986)
Earl L. NEYLAND & Warrie L. Neyland
v.
Priscilla B. NEYLAND.
No. 55973.
Supreme Court of Mississippi.
January 15, 1986.
Rehearing Denied February 12, 1986.
*229 Floyd Wayne Stratton, Liberty, for appellants.
Gary L. Honea, Starrett & Honea, Magnolia, for appellee.
Before ROY NOBLE LEE, P.J., and HAWKINS and ANDERSON, JJ.
HAWKINS, Justice, for the Court:
Earl L. and Warrie L. Neyland have appealed from a final decree of the chancery court of Amite County dismissing their action to impress a trust on funds loaned their son and Priscilla B. Neyland, his wife, and to hold that there was an equitable lien on a house constructed with funds loaned the son and Priscilla.
Persuaded this is a case for impressing an equitable lien, we reverse.

FACTS
James M. Neyland (Jimmy) and Priscilla B. Neyland (Olivia), a young married couple, were desirous of building their own home. After purchasing a lot, they approached Jimmy's parents, Earl L. and Warrie L. Neyland (Mr. and Mrs. Neyland) about a loan to construct the house. When first approached, Mr. and Mrs. Neyland did not have the money readily available, but agreed to make the loan if and when they could liquify some assets. Over a period of six months, there were frequent discussions between Jimmy and Olivia and Mrs. Neyland requesting Mrs. Neyland to persuade Mr. Neyland to get them some money. Mr. Neyland was finally able to scrape up the money by selling off some timber and entering into some oil leases.
On May 26, 1981, Mrs. Neyland made out and signed a check for $21,000, payable to the order of James Neyland. In the space on the front of the check for designating the purpose of the check, the words "House Loan" appeared.
This loan was for the purpose of building a home for the couple. No time or schedule was set for repayment since it appeared it would be some time in the future before the repayments could begin. Mr. Neyland was contemplating retirement in a few years and it was agreed between him, Jimmy and Olivia that the loan would be repaid whenever Mr. and Mrs. Neyland needed it or as Jimmy and Olivia could afford to repay it, whichever came first. The Neylands were anxious to give their children a head start and did not want to burden them with the repayments until they could afford it, unless, of course, they really needed the money paid back sooner.
At the time they received the money, Jimmy and Olivia were not yet ready to build, so they deposited the check in a savings account while the house plans were prepared.
Prior to expenditure of the funds, the account earned $764.39 interest. The $21,764.39, was eventually placed in a special joint checking account set up by Jimmy and Olivia to finance construction of the house. The entire amount was spent in constructing the house.
In December 28, 1981, the Neylands loaned Jimmy and Olivia an additional $1,000 to enable them to go on and move into the house. This check was also made out to Jimmy, but was endorsed by Olivia.
In April of 1984, it became apparent to Mr. and Mrs. Neyland that Jimmy and Olivia were divorcing, and realizing that the loan was in jeopardy, they filed this action seeking a lien upon the house constructed by Jimmy and Olivia, and requesting the court to order the property sold and to pay Mr. and Mrs. Neyland $22,000 plus interest at the legal rate and to pay all costs of court out of the proceeds of the sale.
Jimmy confessed that he and Olivia owed his parents the money, but Olivia denied the complaint and defended by stating that the action was barred by the statute of frauds.
The chancellor, finding that the action was barred by the statute of frauds and further that no constructive trust existed, granted Olivia a directed verdict. The Neylands proceeded to judgment against Jimmy and perfected this appeal.

*230 STATEMENT OF THE LAW
The Neyland's assign as error the finding of the chancellor that no constructive trust arose and his finding that this action is barred by the statute of frauds.
We hold that a constructive trust did arise in favor of the Neylands and therefore we need not address whether an action on the contract is barred by the statute of frauds.
The statute of frauds has no application to a constructive trust or equitable lien which arises by operation of law. Duncan v. Essary, 193 Kan. 241, 392 P.2d 877 (1964); Tichonchuk v. Orloff, 36 Misc.2d 623, 233 N.Y.S.2d 321 (N.Y.Sup. 1962); Coco v. Coco, 107 App.Div.2d 21, 485 N.Y.S.2d 286 (N.Y. 1985).
Section 160 of the Restatement of Restitution states that a constructive trust arises "where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it."
In Kellner v. Kellner, this court quoted from its holding in Oxford Production Credit Assoc. v. Bank of Oxford, 196 Miss. 50, 16 So.2d 384 (1944), stating:
The right of subrogation is founded, not upon contract, but upon justice and equity, and rests upon the principle that substantial justice should be attained regardless of form. It is a creature of equity, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in equity and good conscience, ought to pay it.
Branca v. Branca, 443 A.2d 929 (Del. 1982), is directly on point. In that case, the parents loaned their son and daughter-in-law $35,000 to purchase a home, with the title to the house taken in the children's names. The chancellor held that the parents had made a gift to the daughter-in-law of a one-half interest in the house and awarded the parents a judgment of $35,000 against their son. The Delaware Supreme Court reversed the chancellor's finding that neither an equitable lien nor a constructive trust could be impressed on the real estate as security for the parents' loan.
The Delaware Supreme Court, finding that the chancellor failed to properly apply equitable principles in a familial factual setting, held:
(1) While in the usual case an equitable lien is impressed to reflect an express agreement that the property to be liened was intended to be held as security for the obligation of the promisor, Acacia Mutual Life Insurance Co. v. Newcomb, Del. Ch., 21 A.2d 723 (1941), a lien may also be impressed out of recognition of general equitable principles of right and justice. Acacia v. Newcomb, supra; accord, Tucker v. Prevatt Builders, Inc., Fla.Ct.App., 116 So.2d 437 (1959); Sentel v. James, Ill.Ct.App., 16 Ill. App.2d 373, 148 N.E.2d 22 (1958); Fulp v. Fulp, N.C.Supr., 264 N.E. 20, 140 S.E.2d 708 (1965).
(2) A principal reason for impressing an equitable lien is to prevent unjust enrichment, i.e., where it would be contrary to equity and good conscience for an individual to retain a property interest acquired at the expense of another. Sherman v. Rhode Island Hospital Trust Co., R.I.Supr., 68 R.I. 625, 30 A.2d 498 (1943); Glen Falls Indemnity Co. v. Golden, D.D.C., 148 F. Supp. 41 (1957).
Section 161 of the Restatement of Restitution states that "where property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched, an equitable lien arises."
In Hullum v. Bre-Law Corp., 93 So.2d 727 (1957), the Florida Supreme Court held that, "If a transaction resolves itself into a security, whatever may be its form and whatever name the parties may choose to give it, it is in equity a lien.
We note in passing that it was within the discretion of the chancellor to grant Olivia's motion to consolidate this suit with the divorce action pending between Jimmy and Olivia. In the interest of judicial economy *231 the cases should have been consolidated.
We conclude that the Neylands had an equitable lien against this house and lot. They were entitled to have this lien impressed upon the real estate, including Olivia's interest therein, to reflect their investment of $22,000, plus the legal rate of interest and court costs.
The Neylands were also entitled to a joint and severable judgement against Jimmy and Olivia.
This cause is reversed and remanded to the chancery court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.