¶ 1. Veola L. Brown sought unsuccessfully in the Chancery Court of Pontotoc County to have a deed she had executed in favor of her grandson, Jeffery S. Chapman, reformed to substantially reduce the number of acres conveyed in the instrument. She has now appealed that decision raising as her sole issue a claim that the chancellor's decision was not supported by substantial credible evidence in the record and, thus, constituted an abuse of discretion. We affirm the chancellor's decision.
 I. Facts ¶ 2. By deed executed on November 10, 1998, Brown conveyed to Chapman a parcel of real property owned by her in Pontotoc County and, according to the deed, containing seventeen acres. The seventeen acres were a portion of a twenty acre tract owned by Brown. Her home place was on the remaining three acres of the original tract. The parties both agree that the purpose of the conveyance was to provide property upon which Chapman could construct a residence. On April 23, 1999, Brown commenced this action, claiming that her intention in executing the conveyance had been to convey to her grandson only about one or two acres of her property for his home site and that she never intended to deed away the seventeen acres.
 ¶ 3. The evidence shows that Chapman had been the moving force in obtaining the legal description for the deed, having delivered an aerial photograph of the property to another individual with markings thereon indicating the approximate location of the desired boundaries. This individual then prepared a proposed legal description based on that information, including a mathematical calculation of the acreage encompassed within the markings. Chapman testified that the markings on the photograph had been done jointly by him and Brown. Brown denied this.
 ¶ 4. The deed was prepared in the offices of a local attorney who had, in the past, performed legal services for Brown. Brown executed the deed in the attorney's office, but the record indicates that the deed was actually prepared by a member of the attorney's clerical staff who was the only person present when Brown came in to execute the deed. That staff member testified that she offered the unsigned instrument to Brown for her review but has *Page 774 
no idea of the extent to which Brown inspected the document before signing it. There was no testimony from any party that the amount of acreage conveyed by the deed was discussed with Brown by anyone at the attorney's office.
 ¶ 5. The deed itself is entirely straightforward. Except for the acknowledgment, it consists of one page only, and the detailed metes and bounds legal description is preceded by the following paragraph:
 A tract of land containing 17 acres, more or less, situated in Section 14 and Section 15, Township 11 South, Range 1 East, Pontotoc County, Mississippi, and more particularly described as follows:. . . .
 ¶ 6. Brown admitted that she did not read the instrument before signing it, claiming that, instead, she relied on the good faith of her grandson to have the instrument prepared according to her wishes.
 II. Discussion ¶ 7. Brown makes no direct allegation of fraud on the part of Chapman in her complaint. Rather, it is clear from a reading of that instrument that the only real cause of action asserted by her is one of a rectifiable mistake on her part. In paragraph 2 of the complaint, Brown alleges that she "did not intend to convey seventeen (17) acres as is conveyed by that deed hereinabove referenced, and, in fact, only intended to convey one (1) acre. . . ."
 ¶ 8. The rules of procedure in this state require one relying upon an allegation of fraud to state "the circumstances constituting fraud . . . with particularity." M.R.C.P. 9(b). The absence of any such detailed allegations in the complaint, together with the absence of any indication in the record that the parties tried the case on principles of fraud by consent, leaves us satisfied that, if Brown is entitled to relief, it must be based upon analysis of the law that permits reformation of instruments that, upon proof satisfactory to the court, do not accurately reflect the true intention of the parties to the instrument. This invokes considerations generally referred to as falling within the law regarding alleged mistakes by the parties.
 ¶ 9. Not every allegation of mistake by a party to a legally-binding instrument, even if proven to have occurred, entitles the party to relief. The law permits reformation of instruments to reflect the true intention of the parties when (a) the erroneous part of the contract is shown to have occurred by a mutual mistake, i.e., the party seeking relief is able to establish to the court's satisfaction that both parties intended something other than what is reflected in the instrument in question, or (b) the error has arisen by the unilateral mistake of one party and that mistake is accompanied by evidence of some sort of fraud, deception, or other bad faith activity by the other party that prevented or hindered the mistaken party in the timely discovery of the mistake.McCoy v. McCoy, 611 So.2d 957, 961 (Miss. 1992).
 ¶ 10. Mutual mistake has no application in this case. Chapman testified affirmatively that it was the original intention of both parties to convey the tract as described in the deed. He claimed that, in truth, the problem arose post-conveyance when Chapman's uncle discovered the conveyance and began to cause problems within the family. Brown, in her case in chief, presented no evidence that would tend to contradict Chapman's own testimony and show, instead, that Chapman thought he was to receive only approximately one acre in the conveyance from his grandmother. The chancellor did not *Page 775 
abuse her discretion in denying Brown any relief on the basis of mutual mistake.
 ¶ 11. Even if Brown's testimony as to her intention to convey only one acre is taken as true, that, standing alone, does not entitle her to relief since that constitutes only a unilateral mistake. As the plaintiff, Brown had the additional burden of presenting evidence to convince the chancellor that her own mistake was accompanied by some bad faith dealing on the part of her grandson that effectively prevented her from discovering the actual contents of the deed.
 ¶ 12. The entirety of Brown's proof in this regard consisted of her own contention that she felt it unnecessary to review the deed before signing because of her reliance on Chapman's good faith to have the deed prepared according to her desires. The chancellor felt that this testimony, when viewed in the light of other largely uncontradicted evidence, did not establish the sort of bad faith activity on the part of Chapman to warrant relief. We cannot discover in that conclusion the requisite abuse of discretion that would require this Court to intervene.
 ¶ 13. On appeal, Brown relies extensively on case law dealing with confidential relationships of various sorts that give rise to a presumption of undue influence on the part of the recipient of a conveyance. See, e.g., Mullins v. Ratcliff, 515 So.2d 1183, 1191-1192
(Miss. 1987); Anderson v. Burt, 507 So.2d 32, 36 (Miss. 1987). Her contention appears to be that, due to her advanced age and the close family relationship existing between her and Chapman, he was able to exert undue influence over her to execute the deed for substantially more property than she actually desired to convey. This theory of recovery is not, in our view, the same as a claim based on mistake, whether mutual or unilateral. A claim of undue influence involves evidence that the independent will or judgment of one party has been effectively overmastered by the other and that overmastering influence is then used to persuade the party to undertake some action the party otherwise would not have done.
 ¶ 14. Even were the case to be analyzed under a claim that the deed was obtained against Brown's better judgment through the improper exertion of undue influence by Chapman, there is not much evidence in the record that would tend to show that Brown was so dependent upon Chapman that he could reasonably be seen as able to exercise undue influence over her decision-making processes. The only evidence in that regard was that Brown was advanced in years and that Chapman, from time to time, helped her out in rather mundane ways. There was no evidence that he was active in the management of her property or her finances or that she relied upon him for advice in such matters on a regular basis. To the contrary, the only evidence in that regard was that Brown, despite her advanced years, maintained an independent lifestyle and was fully capable of making her own independent judgments on various things.
 ¶ 15. As to some other form of bad faith or underhanded dealing on Chapman's part to disguise from Brown the true import of the deed she was to sign, we can discover no compelling evidence suggesting that to be the case. It is undisputed that the deed was presented to Brown in the presence of a completely disinterested and neutral person — that being the clerical assistant who prepared the deed — and that, in that person's presence, Brown was encouraged to review the instrument to determine that it was according to her intentions. The deed itself, as we have already demonstrated, quite plainly reflected on its face the fact that it was a *Page 776 
conveyance of substantially more than one acre. During the course of the trial, counsel for Chapman sought to have Brown read the paragraph from the deed reciting the number of acres in the conveyance and, insofar as the record shows, Brown was able to read the instrument without hesitation or difficulty. The law does not permit a person to escape the consequences of entering into a written agreement upon proof that the person, having an opportunity to review the terms of the instrument, elected not to do so. Godfrey, Bassett Kuykendall Architects, Ltd. v.Huntington Lumber Supply Co., Inc., 584 So.2d 1254, 1257 (Miss. 1991).
 ¶ 16. If Chapman's scheme was to somehow subtly lull Brown into failing to read an instrument that so plainly on its face contained provisions contrary to what Brown asserts she believed them to be, then his scheme was an extraordinarily bold one, depending as it would have, on his grandmother's refusal to review the instrument at a time when she was being cautioned to do so by the person who had prepared the deed and presented it to her for execution. The chancellor did not find that to be the case. Sitting as trier of fact, the chancellor hears the evidence first-hand and is in the best position to assess the credibility of the witnesses. Richton Bank Trust Co. v. Bowen, 798 So.2d 1268, 1273
(¶ 14) (Miss. 2001). The chancellor's conclusion that Chapman told a more credible version of the events that led to the execution of the instrument in question in this case appears in our view to be supported by a substantial measure of credible evidence. In that circumstance, we can find no basis for this Court to intervene on behalf of the appellant Brown.
 ¶ 17. THE JUDGMENT OF THE CHANCERY COURT OF PONTOTOC COUNTY ISAFFIRMED. COSTS OF THE APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P. JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS,CHANDLER AND BRANTLEY, JJ., CONCUR.