IRVING, J.,
 

 for the Court:
 

 ¶ 1. Janet Wright; her daughter, Patricia Wright; and her son-in-law, James O’Daniel, built a house together. Janet purchased the lot and held title with Patricia as joint tenants with right of survivor-ship. James and Patricia obtained a loan to finance a portion of the construction costs; however, the lender required that the house be titled in James’s and Patricia’s names. Consequently, Janet and Patricia executed a deed that conveyed the property to Patricia and James. Janet asked that her name be returned to the deed following the loan closing. After the loan closing, Patricia and James executed a second deed that conveyed the property to Janet, Patricia, and James as joint tenants with right of survivorship. The second deed retained James as a joint tenant and reduced Janet’s interest in the property from one-half to one-third. Janet noticed the error when she reviewed the deed, but she did not voice her concerns regarding the deed until Patricia and James separated.
 

 
 *696
 
 ¶ 2. Janet filed suit against James in the DeSoto County Chancery Court on October 28, 2007,
 
 [1]
 
 four years after she discovered that the deed included James. Janet sought relief in the form of a constructive trust or an equitable lien. The chancellor found that Janet had failed to present sufficient proof to establish a constructive trust and that Janet’s claim was time-barred.
 
 [2]
 

 ¶ 3. Janet filed a motion to reconsider, arguing that the chancellor had applied the wrong limitations period to her claim. Additionally, Janet argued that James had waived the affirmative defense of the statute of limitations when he failed to assert it in his answer. The chancellor found that Janet’s claim was still barred under the doctrine of laches, which James had raised in his answer.
 

 ¶4. Feeling aggrieved, Janet appeals and argues that the chancellor erred in (1) applying the doctrine of laches, as the claim was brought within the applicable statute of limitations period; (2) refusing to establish a constructive trust or an equitable lien; and (3) refusing to reform the deed on the ground of mutual mistake.
 

 ¶ 5. The chancery court incorrectly dismissed Janet’s claim by applying the doc-ti'ine of laches; nevertheless, we affirm the chancery court’s judgment on other grounds.
 

 FACTS
 

 ¶6. In 2000, Janet and her husband, Charles Wright, moved into Patricia and James’s house. Charles died in 2002. Before his death, Janet and Charles had begun searching for property and intended to build a house of their own. After Charles died, Janet, Patricia, and James discussed the possibility of building a house together.
 

 ¶ 7. Janet later purchased a lot in the Dickens Place subdivision in Southaven, Mississippi, and deeded the property in both her and Patricia’s names. Janet, Patricia, and James signed a construction contract for a 5,800-square-foot house with an estimated cost of between $420,000 and $440,000. The parties did not discuss how the construction costs would be paid or how their ownership interests would be divided once the house was completed.
 

 ¶ 8. Janet testified that she initially intended to contribute $200,000 to the construction of the house. As construction on the house progressed, it became clear that the house’s cost would exceed the initial estimate. Janet paid an additional $200,000, for a total of $400,000, toward the completion of the house before she approached Patricia and James about securing a construction loan to pay for the remaining costs.
 

 ¶ 9. On March 3, 2003, Janet, Patricia, and James obtained a construction loan from First Security Bank. The loan was secured by the Dickens Place property, and Janet, Patricia, and James signed the security agreement. The construction loan had to be paid off upon the completion of the house. Therefore, Patricia and James made arrangements to obtain permanent financing from National City Mortgage. National City Mortgage required that the property be titled in James’s and Patricia’s names since they were the mortgagors on the house. The parties agreed to transfer title of the prop
 
 *697
 
 erty by warranty deed from Janet and Patricia to James and Patricia.
 

 ¶ 10. Bridgforth and Buntin, a law firm, handled the loan closing. Janet O’Daniel,
 
 [3]
 
 James’s mother, worked for the firm and assisted with the closing. O’Daniel testified that Janet had instructed her to return Janet’s name to the title after the loan closing. However, O’Daniel further testified that Janet never specified the percentage ownership she sought in the property once her name was returned to the property’s title.
 

 ¶ 11. After the loan closing, Bridgforth and Buntin prepared a second deed that placed Janet’s name back on the title. On July 17, 2003, James and Patricia executed the deed, which conveyed the property from James and Patricia to Janet, Patricia, and James. When Janet received the second deed, she noticed that James had been left on the title. However, she did not contact Bridgforth and Buntin regarding the error. Instead, Janet contacted her attorney, Bob Alvarez, who advised Janet to contact a real-estate attorney to resolve the error. However, Janet took no further action to correct the deed.
 

 ¶ 12. Patricia filed a petition for divorce from James on May 2, 2007. Patricia testified that after she and James separated, Janet voiced her concerns about the deed and the reduction of Janet’s interest in the property.
 

 ¶ 13. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 ¶ 14. A Mississippi appellate court employs a limited standard of review on appeals from chancery court.
 
 Corp. Mgmt. v. Greene County,
 
 23 So.3d 454, 459 (¶ 11) (Miss.2009). As such, we “will not disturb the factual findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous[,] or applied an erroneous legal standard.”
 
 Id.
 
 (quoting
 
 Biglane v. Under The Hill Corp.,
 
 949 So.2d 9, 13-14 (¶ 17) (Miss. 2007)). However, questions of law are reviewed de novo.
 
 Id.
 

 1. Laches
 

 ¶ 15. Janet argues that the chancellor erred in applying the doctrine of laches as the statute of limitations had yet to run on her claim. Janet asserts that the ten-year statute of limitations applicable to actions to recover land applies to her claim.
 
 [4]
 

 ¶ 16. “[T]he limitations period found in [section] 15-1-7 applies to suits at law to recover land....”
 
 O’Neal Steel, Inc. v. Millette,
 
 797 So.2d 869, 872 n. 2 (Miss. 2001). Its counterpart for suits in equity is found in section 15-1-9.
 
 [5]
 

 Id.
 
 “Since
 
 *698
 
 [section] 15-1-9 incorporates [section] 15-1-7 by reference, [the Mississippi Supreme Court] reads these two statutes together.”
 
 Id.
 
 (citing
 
 Neal v. Teat,
 
 240 Miss. 35, 39, 126 So.2d 124, 124 (1961)).
 

 ¶ 17. Janet contends that sections 15-1-7 and 15-1-9 control her claim. Our supreme court has held that “laches is no defense if the proceedings are brought within the prescribed period of limitation.”
 
 Cont’l Oil Co. v. Walker,
 
 238 Miss. 21, 34, 117 So.2d 333, 338 (1960) (citing
 
 Hill v. Nash,
 
 73 Miss. 849, 862, 19 So. 707, 710 (1896)).
 

 ¶ 18. While laches may not be employed to shorten the limitations period, Janet’s argument that her claim is governed by sections 15-1-7 and 15-1-9 is incorrect. Our supreme court has held that sections 15-1-7 and 15-1-9 do not “apply except where the person invoking [them] has been in adverse possession of the land against the true owner.”
 
 Cont’l Oil Co.,
 
 238 Miss, at 33, 117 So.2d at 337 (citing
 
 Kennedy v. Sanders,
 
 90 Miss. 524, 542, 43 So. 913, 916 (1907)). Additionally, our supreme court has referred to section 15-1-7 as “our statute on adverse possession.”
 
 O’Neal Steel, Inc.,
 
 797 So.2d at 873 (¶ 11) (quoting
 
 Lowi v. David,
 
 134 Miss. 296, 300, 98 So. 684, 685 (1924)).
 

 ¶ 19. There is no evidence that any of the parties adversely possessed the property, nor did Janet assert a claim of adverse possession in her complaint. Janet did, however, seek equitable relief in the form of a constructive trust. The statute of limitations applicable to actions involving constructive trusts provides in pertinent part:
 

 Bills for relief, in case of the existence of
 
 a trust not cognizable by the courts of common law
 
 and in all other cases not herein provided for, shall be filed within ten years after the cause thereof shall accrue and not after, saving, however, to all persons under disability of infancy or unsoundness of mind, the like period of time after such disability shall be removed.
 

 Miss.Code. Ann. § 15-1-39 (Rev.2003) (emphasis added).
 

 ¶ 20. Janet testified that she discovered the reduction of her ownership interest in the property as early as November 2003. Janet filed her complaint seeking the imposition of a constructive trust on October 23, 2007, well within the ten-year limitations period applicable to constructive trusts. Because the limitations period had yet to run on Janet’s action, the chancellor erred in applying the doctrine of laches.
 

 2. Constructive Trust
 

 ¶ 21. Although Janet filed her claim within the applicable limitations period, we find that she is not entitled to relief in the form of a constructive trust. “A constructive trust is a fiction of equity created for the purpose of preventing unjust enrichment by one who holds legal title to property which, under principles of justice and fairness, rightfully belongs to another.”
 
 McNeil v. Hester,
 
 753 So.2d 1057, 1064 (¶ 24) (Miss.2000) (citing
 
 Allgood v. Allgood,
 
 473 So.2d 416, 421 (Miss.1985);
 
 Russell v. Douglas,
 
 243 Miss. 497, 505-06, 138 So.2d 730, 734 (1962)). Our supreme court has held that a constructive trust is properly imposed when:
 

 [O]ne who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who
 
 *699
 
 in any way against equity and good conscience, either has obtained or holds-the legal right to property which he ought not, in equity and good conscience, hold and enjoy.
 

 Id.
 
 (quoting
 
 Saulsberry v. Saulsberry,
 
 223 Miss. 684, 690, 78 So.2d 758, 760 (1955)). Furthermore, “clear and convincing proof is necessary to establish a constructive trust.”
 
 Id.
 
 at (¶ 25) (citing
 
 Planters Bank & Trust Co. v. Sklar,
 
 555 So.2d 1024, 1034 (Miss.1990)).
 

 ¶ 22. The record is void of any evidence of fraud, duress, or unconscionable conduct on James’s part. James testified that he was not involved in the preparation of the deed. While the law firm where O’Daniel worked was responsible for the deed’s preparation, she testified that she had no direct involvement with the deed’s preparation, nor did she intend to divest Janet of her ownership interest. Furthermore, Janet’s only instruction regarding the deed’s preparation was that her name be added back to the deed following the loan closing, which the law firm did. Janet did not instruct O’Daniel or Bridgforth and Buntin to remove James from the deed.
 

 ¶ 23. Janet, Patricia, and James all testified that there was never an agreement or a family discussion regarding each party’s ownership interest in the property. While Janet asserted in her testimony that she and Patricia had an implied 50/50 ownership agreement, Janet took no action to enforce her alleged interest or to correct the deed until it became apparent that James and Patricia were divorcing. The familiar maxim that equity aids the vigilant and not those who slumber on their rights certainly applies here. Janet admitted in her testimony that she discovered that the deed included James as a joint owner of the property as early as November 2003. Janet did not contact the law firm that prepared the deed to inform it of the error. Instead, Janet contacted her attorney, who advised her to contact a real-estate attorney. However, Janet failed to do so and took no further action to correct the deed until Patricia and James filed for divorce.
 

 ¶24. Janet offered no evidence that James engaged in fraud, duress, overreaching, or other questionable conduct in obtaining his ownership interest in the property. Furthermore, we do not find that James was unjustly enriched, especially when the parties never agreed to or even discussed specific ownership interests in the property. Because Janet failed to prove the existence of a constructive trust by clear and convincing evidence, the chancellor did not err in refusing to impose a constructive trust.
 

 3. Equitable Lien
 

 ¶ 25. Janet argues that the chancellor erred in refusing to place an equitable lien on the property. Equitable liens, like constructive trusts, are designed to prevent unjust enrichment.
 
 Neyland v. Neyland,
 
 482 So.2d 228, 230 (Miss.1986). As stated above, we do not find that James was unjustly enriched. Therefore, Janet is not entitled to the imposition of an equitable lien.
 

 ¶ 26. Janet argues that
 
 Neyland
 
 is analogous to her case. In
 
 Neyland,
 
 parents loaned money to their son, Jimmy, and daughter-in-law, Olivia, to build a house.
 
 Id.
 
 at 229. After construction was completed, it became clear that Jimmy and Olivia were divorcing.
 
 Id.
 
 Jimmy’s parents filed an action seeking an equitable lien on the house.
 
 Id.
 
 Our supreme court found that the parents were entitled to have a lien on the property equal to the amount of the loan plus interest.
 
 Id.
 
 at 231.
 

 ¶ 27.
 
 Neyland
 
 is easily distinguishable from this case. In
 
 Neyland,
 
 the parents
 
 *700
 
 loaned their son money to construct a house. While the parties did not agree to a repayment schedule, they did agree that the money was a loan that had to be repaid.
 
 Id.
 
 at 229. Janet testified that she never intended that James or Patricia would have to repay her for the money that she contributed to the house’s construction costs. Furthermore, as noted above, Janet, Patricia, and James all testified that there was no discussion or agreement regarding ownership interests in the house. Instead, the parties simply agreed to build a house that Janet, Patricia, and James could live in and enjoy together.
 

 ¶28. Because we do not find that James was unjustly enriched, we cannot find that the chancellor erred in refusing to impose an equitable lien on the property-
 

 Jp. Mutual Mistake
 

 ¶ 29. Janet also argues that the chancellor erred in refusing to reform the deed on the ground of mutual mistake. “In an action to reform a deed based on a mistake theory, the petitioner must demonstrate a mutual mistake among the parties or a unilateral mistake in combination with fraud or inequitable conduct on the part of the benefitting party.”
 
 McCoy v. McCoy,
 
 611 So.2d 957, 961 (Miss.1992) (citing
 
 Perrien v. Mapp,
 
 374 So.2d 794, 796 (Miss.1979) (overruled on other grounds)). Mutual mistake must be proven beyond a reasonable doubt.
 
 Id.
 

 ¶ 30. In
 
 Brown v. Chapman,
 
 809 So.2d 772 (Miss.Ct.App.2002), this Court refused to reform a deed that Veola Brown had executed in favor of her grandson, Jeffery.
 
 Id.
 
 at 773 (¶ 2). The deed conveyed seventeen acres of Brown’s property.
 
 Id.
 
 However, Brown claimed that she only intended to convey one or two acres to Jeffery so that he could build a house.
 
 Id.
 
 Brown retained a local attorney to prepare the deed, but a member of the attorney’s clerical staff actually prepared the deed.
 
 Id.
 
 at (¶ 4). Brown admitted that she neglected to read the deed before signing it.
 
 Id.
 

 ¶ 31. Brown argued that because she did not intend to convey seventeen acres to Jeffery, the deed should be reformed on the ground of mistake.
 
 Id.
 
 at 774 (¶ 7). This Court held that mutual mistake did not apply because the conveyance resulted from Brown’s unilateral mistake.
 
 Id.
 
 at (¶ 10). Brown had failed to present evidence of fraud or other unconscionable conduct on Jeffrey’s part, and this Court refused to reform the deed on the ground of unilateral mistake.
 
 Id.
 
 at (¶¶ 11-12).
 

 ¶ 32. In this case, Janet reviewed the deed. The deed clearly reflected that James retained an ownership interest in the property, and Janet took note of that fact. However, Janet failed to take action to correct the deed other than soliciting the advice of her personal attorney, which she did not follow. In
 
 Bromi,
 
 a case with similar facts, this Court determined that a unilateral mistake had occurred. We see no reason to hold differently here. While Janet may have intended to share an ownership interest in the property with Patricia alone, this constitutes only a unilateral mistake, and Janet has failed to prove fraud or other unconscionable conduct on the part of James that would entitle her to relief. Therefore, the chancellor did not err in refusing to reform the deed on the ground of mistake.
 

 ¶ 33. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR.
 
 *701
 
 CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . In the original complaint, Janet named Patricia, James, National City Mortgage Company, and First Tennessee Bank National Association as defendants. However, Janet and James are the only parties in this appeal.
 

 [2]
 

 . The chancellor applied the limitations period for oral contracts set forth in Mississippi Code Annotated section 15-1-29 (Rev.2003).
 

 [3]
 

 . For clarity, we will refer to Janet Wright as "Janet” and James’s mother as "O’Daniel.”
 

 [4]
 

 . Mississippi Code Annotated section 15-1-7 (Rev.2003) provides in pertinent part:
 

 A person may not make an entry or commence an action to recover land except within ten years next after the time at which the right to make the entry or to bring the action shall have first accrued to some person through whom he claims, or, if the right shall not have accrued to any person through whom he claims, then except within ten years next after the time at which the right to make the entry or bring the action shall have first accrued to the person making or bringing the same.
 

 [5]
 

 .Mississippi Code Annotated section 15-1-9 (Rev.2003) provides in pertinent part:
 

 A person claiming land in equity may not bring suit to recover the same except within the period during which, by virtue of section 15-1-7, he might have made an entry or brought an action to recover the same, if
 
 *698
 
 he had been entitled at law to such an estate, interest, or right in or to the same as he shall claim therein in equity.