ISHEE, J.,
for the Court:
¶ 1. In 2011, the Itawamba County Chancery Court ruled to divide land once owned by Gocher and Reba Morrow (the Morrows) among their three children— Phillip, Joel, and Ronald. Phillip appeals, claiming the facts support his theory that his parents intended for the land to be solely owned by him. He alternatively asserts that if the chancery court’s judgment is affirmed as to the property’s ownership, he should be granted an equitable lien on the property for improvements he made to the land over the course of almost thirty years. Finding no reversible error, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. The Morrows owned two tracts of land in Itawamba County, Mississippi, consisting of approximately 160 acres and 40 acres, respectively (the property). According to Phillip, in the mid-1980’s, the Morrows entered into an oral agreement *188 with him that if he indefinitely helped his father farm the property, he would inherit the property as a sole owner upon the Morrows’ deaths. Phillip asserts the Morrows extended this offer to each of them three children, but he was the only one to accept. However, on October 6, 1993, the Morrows deeded the property to Phillip without reservations (Deed 1) after Reba was involved in a motor-vehicle accident she feared would incite litigation against them.
¶ 3. Phillip claims that three years later, he and the Morrows decided Phillip should deed the property back to the Morrows so that they could, in turn, deed the property back to Phillip while reserving unto themselves a life estate. As such, Phillip and the Morrows hired Nell May, a local attorney, to help complete the transactions. However, Phillip testified that he did not provide any instruction to May regarding the transactions and that he was unaware of his parents’ instructions to May regarding the transactions.
¶ 4. The pertinent land records on file reflect that on April 22, 1996, a warranty deed was executed from Phillip to the Morrows (Deed 3) conveying the property to Phillip’s parents. Deed 3 was verified by a notary public as being “signed, sealed and delivered” and also filed of record in the chancery court on April 22, 1996. On March 23, 1996, the Morrows executed a warranty deed conveying the property to Phillip with the reservation of a life estate unto themselves (Deed 2). Deed 2 was verified by a notary public as being “signed, sealed and delivered” on March 23, 1996. However, Deed 2 was not filed in the chancery court until April 23, 1996.
¶ 5. On January 5, 1999, Gocher passed away, followed by the death of Reba on January 1, 2000. Shortly thereafter, Phillip filed a complaint against his brothers in the chancery court to quiet and confirm title and his sole ownership of the property. In 2004, Phillip’s case was bifurcated to address the separate issues of Phillip’s claim of ownership and his alternate claim for an equitable lien on the property should he not be granted sole ownership.
¶ 6. In 2011, the chancery court determined that the law supported the passing of the property to the Morrows estate upon Reba’s death in 2000 and division of the property equally among the three brothers. The chancery court also found Phillip’s claim for an equitable lien to be without merit. Phillip now appeals claiming the chancery court made numerous errors in its determination that he is not the sole owner of the property and that the chancery court erred in arriving at its determination that he is not entitled to an equitable lien on the property. Finding no reversible error, we affirm the judgment of the chancery court.
DISCUSSION
¶ 7. It is well settled that a chancellor’s findings “are subject to an abuse-of-discretion standard of review.” Carlisle v. Allen, 40 So.3d 1252, 1256 (¶ 20) (Miss.2010) (citing Barton v. Barton, 790 So.2d 169, 175 (¶ 17) (Miss.2001)). We will not disturb a chancellor’s findings when they are “supported by substantial evidence!,] unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous, or [applied] an erroneous legal standard!.]” Olive v. McNeal, 47 So.3d 735, 739 (¶ 10) (Miss.Ct.App.2010). However, questions of law are reviewed de novo. Miller v. Parker McCurley Props., L.L.C., 36 So.3d 1234, 1239 (¶ 9) (Miss.2010) (citation omitted).
I. Ownership of the Property
A. Effective Date and Reformation of Deed 2 and Deed 3
¶ 8. In his first assignment of error, Phillip asserts the chancery court “avoid *189 ed” the issue of delivery of Deed 2 and Deed 3. Phillip readily admits in his brief: “Generally, a deed only takes effect upon delivery, not upon signing.” See, e.g., Crooker v. Hollingsworth, 210 Miss. 636, 639, 46 So.2d 541, 542 (1950); Cannon v. Holburg Mercantile Co., 108 Miss. 102, 104, 66 So. 400, 402 (1914). Indeed, Mississippi law directs attention toward the date of delivery in matters questioning the effective date of a deed. See Grubbs v. Everett, 236 Miss. 698, 700-01, 111 So.2d 923, 923-24 (1959). In that vein, the chancery court recognized that the matter of delivery relates back to “the acknowledgment ... where the one who notarized [Deed 2 and Deed 3] said it was signed and delivered.”
¶ 9. Here, the same notary public, attorney May, verified both Deed 2 and Deed 3. In Deed 2, May stated that on March 23, 1996, the Morrows personally appeared before her and “acknowledged that they each signed, sealed and delivered the foregoing Warranty Deed [to convey the property to their son] on the day and year therein mentioned for the purposes therein expressed as their act and deed.” Again, the date the Morrows listed on Deed 2 was March 23,1996, and the date May listed on her notary-public verification was also March 23, 1996. As such, the Morrows delivered Deed 2 on March 23, 1996. The same process took place with regard to Deed 3. In Deed 3, May noted that Phillip “acknowledged that he signed, sealed and delivered the foregoing Warranty Deed [to convey the property to his parents] on the day and year therein mentioned for the purposes therein expressed as his act and deed.” Phillip and May noted April 22, 1996, as the signing and delivery date for Deed 3.
¶ 10. Phillip asserts that “it is the intention of the parties that is ultimately determinative with regard to whether a deed has been delivered.” See 23 Am. Jur.2d Deeds § 118. Phillip asserts that the intention of the parties was for his parents to retain a life estate in the property but for Phillip to ultimately inherit the land. However, he acknowledged in his testimony that he cannot independently remember the date on which he signed Deed 3 without looking at the deed itself. He also testified that he did not know when his parents signed Deed 2 or what instructions were given to May regarding recording the deed. Finally, he admitted that he could not remember which deed was signed first. Furthermore, neither May nor any of May’s staff were ever called as witnesses, and the Morrows and May are all now deceased. Therefore, the only testimony available with regard to the intention of the parties is that of Phillip.
¶ 11. The argument of intent is directly related to Phillip’s second assignment of error that the chancery court improperly declined to reform Deed 2 to reflect a delivery date of April 23, 1996— the date on which Deed 2 was recorded in the chancery court. In order to reform a deed, the movant must prove “beyond a reasonable doubt” that an error exists in a deed that contradicts the true intention of the parties involved. Wright v. O’Daniel, 58 So.3d 694, 700 (¶ 29) (Miss.Ct.App.2011) (citation omitted). In order to meet the applicable standard of proof, the movant must show that either:
(a) [T]he erroneous part of the [deed] is shown to have occurred by a mutual mistake ..., or (b) the error has arisen by the unilateral mistake of one party and that mistake is accompanied by evidence of some sort of fraud, deception, or other bad faith activity by the other party that prevented or hindered the mistaken party in the timely discovery of the mistake.
*190 Brown v. Chapman, 809 So.2d 772, 774 (¶ 9) (Miss.Ct.App.2002) (citation omitted).
¶ 12. Again, Phillip failed to provide evidence, other than his own testimony, to prove the intention of the parties regarding delivery differed from the actual delivery of the deeds. As stated by the chancery court:
No proof was presented to this court to show that either of the dates of the 1996 Deeds were incorrect. Neither Nell May nor any of her staff was called as a witness. Phillip Morrow testified that he did not know ... which of the Deeds was executed first.... Suffice it to say here, this [court] does not find that there was sufficient proof presented to it to reform the Deed in question. The allegation [was] made that it was probably and possibly a scrivener’s error at one point [with regard to] the date. There was no proof presented to me to that effect. And the [c]ourt cannot presume upon the proof.
¶ 13. We agree that Phillip has failed to meet the burden of proof for showing that the chancery court abused its discretion in addressing the date of delivery of the deeds. We further find that Phillip lacked the proof necessary to show that mutual mistake or fraud existed in the execution and delivery of Deed 3 such that the deed should be reformed. These issues are without merit.
B. Doctrine of After-Acquired Property
¶ 14. Phillip next asserts that even if Deed 3 were not reformed, title to the property should have vested in Phillip under the doctrine of after-acquired property (DAAP). Under the DAAP:
If a grantor having no title to land purports to convey it by a warranty deed, he will be estopped to show that at the time of the deed he had no title to convey. If he later acquires the title, his after-acquired title will pass to the grantee without further conveyance by way of estoppel.
Butler v. City of Eupora, 725 So.2d 158, 160 (¶ 9) (Miss.1998) (citation omitted). Butler went on to note that the DAAP must be acknowledged as an affirmative defense in the pleadings of the case so as to give the opposing party notice. Id. at (¶ 7).
¶ 15. Here, the chancery court noted that Phillip failed to raise the DAAP as an affirmative defense or mention the DAAP or its elements in any pleadings. Additionally, the record reflects that Phillip failed to designate any expert witnesses with regard to the DAAP either in his original designation of experts or his amended designation of experts. As such, the chancery court determined that Phillip failed to provide notice to Joel and Ronald that he was applying the DAAP to his case.
¶ 16. We agree. While Phillip argues the basis of the DAAP was set forth in his amended designation of attorney Tommy McElroy as an expert in the field of property law, we fail to see how a generalized designation of a property-law attorney translates into raising the DAAP as a defense. Phillip asserts the “spirit” of the law negates the mention of the DAAP as a specific doctrine. We have held that a doctrine need not be mentioned by name to apply as an affirmative defense, so long as the complaint or pleadings actually recite all of the elements of the applicable doctrine. See, e.g., Christian Methodist Episcopal Church v. S & S Constr. Co., 615 So.2d 568, 572 (Miss.1993). Since Phillip failed to either name the DAAP in his pleadings or illustrate the elements of the DAAP in his pleadings, he failed to meet the notice requirement necessary to invoke the DAAP.
¶ 17. Nonetheless, even if Phillip had met the notice requirement, his asser *191 tion of the DAAP fails on the merits. The DAAP is predicated on the theory that “if the grantor subsequently acquires title, which he has purported to convey, from other than the grantee himself or one claiming under or deriving title from him,” then the after-acquired title will lawfully pass to the grantee without encumbrance. 23 Am.Jur.2d Deeds § 279. Here, however, Phillip claims the benefit of the DAAP through his own re-conveyance of the property to his parents, not someone else’s conveyance of the property.
¶ 18. In order for the DAAP to apply to the present case, Phillip must have attempted to convey the property to his parents without any authority to do so. In other words, had the Morrows not conveyed the property to Phillip in Deed 1, perhaps the DAAP would apply since Phillip would not have legally been able to convey the property to his parents in Deed 3. However, having legally conveyed the property to his parents in Deed 3 as the final conveyance of land prior to his parents’ deaths, he may not now claim the benefits of the DAAP.
¶ 19. Furthermore, the DAAP is predicated upon the idea that an uninformed grantee should not be penalized if the grantor did not own the property at the time of conveyance, yet subsequently acquired it. Conversely, a grantee may not rely on the DAAP if he was “misled through his own want of reasonable care and circumspection [since] estoppel is denied where the party claiming it was put on inquiry as to the truth and had available means for ascertaining it.”
¶20. The record reflects that Phillip was well aware that he owned the property at the time he conveyed the property back to his parents. Additionally, both Phillip and the Morrows had the ability to contact May to determine exactly who owned the property during which periods of time. Accordingly, while we sympathize with Phillip’s plight in his argument regarding mistake in Deed 2 and Deed 3, we nonetheless find his issues meritless with regard to the DAAP.
II. Equitable Lien
¶ 21. In his final argument on appeal, Phillip argues the chancery court erred in denying his request for an equitable lien in the amount of $527,000 on the property to reflect the alleged unjust enrichment conferred upon Joel and Ronald through inheritance of the property. A chancery court is afforded “broad discretion” with regard to the grant or denial of an equitable lien, and its findings should not be disturbed unless “manifestly wrong [or] clearly erroneous, or [if] an erroneous legal standard was applied.” McGee v. McGee, 726 So.2d 1220, 1224 (¶ 13) (Miss.Ct.App.1998) (citation omitted).
¶ 22. Phillip cites Dudley v. Light, 586 So.2d 155, 159 (Miss.1991), for the proposition that a lien may be assigned on property under the general theory of justice “where it would be contrary to equity and good conscience for an individual to retain a property interest acquired at the expense of another.” As such, Phillip asserts that he incurred extensive farming costs and expenses, as well as hours of manual labor on the farm, from the 1980s until the chancery court’s conveyance of the property to the three brothers in 2011. The largest expenditure Phillip claims is $292,680 in his own labor on the property. Other expenses included mileage of $31,088.40; equipment parts and repairs of $14,835; costs of seed, trees, and chemicals in the amount of $54,865.49; and other expenses such as gas, oil, diesel, mowing, weed eating, utilities, and beaver control.
¶23. However, as noted by the chancery court, the overwhelming majority of Phillip’s expenses ultimately benefited Phillip since the profits of the property’s farming activities were enjoyed by Phillip *192 as income. Additionally, Phillip conceded in his testimony that the farm expenses identified in his annual tax returns were approximately $140,000 less than the expenses he was claiming in support of his argument for an equitable lien. Finally, the record reflects that none of the expenses incurred by Phillip permanently improved the property such that Joel and Ronald would enjoy the fruits of Phillip’s labor after the property was divided.
¶ 24. We fail to find reversible error in the chancery court’s decision to deny Phillip’s request for an equitable lien in any amount on the property. This issue is without merit.
¶ 25. THE JUDGMENT OF THE ITAWAMBA COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., ROBERTS, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. BARNES AND CARLTON, JJ., CONCUR IN RESULT ONLY. IRVING, P.J., NOT PARTICIPATING.